## BENJAMIN V. PAGE *et al.*

*v.*

## SAMUEL S. GREELEY.

1. SPECIFIC PERFORMANCE — *vendor cannot enforce unless he is able to make the title contracted for.* Where a purchaser has contracted for a good title, of record, upon bill filed by the vendor, it appearing that the latter had not such a title as he covenanted to convey, the court will not compel the vendee to take a title depending upon adverse possession under the statute of limitations, although it may be a good title, as that would be to enforce a different contract from that of the parties, a good title of record and one depending upon parol evidence being substantially different.

2. SAME — *whether taking possession is a waiver of objection to title.* Where, by the terms of a contract for the sale or exchange of lands, the vendor was to give immediate possession upon the completion of certain improvements, and to furnish abstract of title, there being no time fixed for the last, this will have an important bearing upon the question of waiver of objections to the title by the vendee in taking possession, as possession in such case is consistent with the contract.

3. The mere act of taking possession of real estate and exercising acts of ownership over it will not preclude the purchaser from his right to investigate the title, unless the court is satisfied that he intended to waive, and has actually waived, such right. The waiver is a question of intention, and one of fact from all the circumstances, and not an arbitrary presumption of law from the mere fact of taking possession.

4. EVIDENCE — *in chancery must have its foundation in the pleadings.* It is a well settled rule, that every material allegation must be put in issue by the pleadings, and no interrogatories can be filed which do not arise from, or relate to, some fact charged in the complainant's bill.

5. When a waiver of objection to the title is relied on as a ground for specific performance of the contract of sale, the vendor's bill should be so framed as to put that question in issue, or evidence to prove the waiver cannot be received.

6. CHANCERY — *complainant confined to grounds of relief stated in his bill.* On bill by a vendor for specific performance which proceeds on the ground that the vendor had the very kind of title he agreed to make, and that he furnished an abstract showing it, which was satisfactory, and alleges that the vendee went into possession, the vendor, on failing to establish such a title as he agreed to give, will not be allowed to set up and insist upon a waiver of objection to the title by the purchaser by his taking possession.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This was a bill in equity, brought by Page and Sprague, appellants, as vendors, against Greeley, as vendee, to enforce specific performance of a contract made between the parties March 30, 1871, for the exchange of houses and lots situate in the city of Chicago, upon certain terms and conditions therein specified. The agreement was executed only by Page of the one part and Greeley of the other part. It contained a provision for the completion by Page of a house in the process of erection on his lot, and that Greeley might take possession as soon as it was completed; also the following:

" 7th. The said parties shall respectively furnish, each to the other, abstracts of title made by competent abstract makers, to the premises herein agreed to be sold, and upon approval of title by their respective attorneys, shall cause to be made, each to the other, deeds of said premises, with usual covenants of warranty, which deeds shall be duly executed and acknowledged by those persons whose conveyances shall be deemed necessary to pass the title, and which deeds shall be duly stamped by the

402         Page *et al. v.* Greeley.         [Sept. T.

Statement of the case.

respective grantors, and shall contain such conditions as may be proper and necessary to give effect to these articles of agreement. The consideration expressed in the deed from said Page to said Greeley, and which shall be made to convey the premises by said Page herein agreed to be sold, shall be $16,000, and the consideration expressed in the deed from said Greeley to said Page, or which shall be made to convey the premises by said Greeley herein agreed to be sold, shall be $6,275."

The bill sets out this provision according to its legal effect, alleges that complainants in May, or June, 1871, furnished defendant with abstracts of title to their lot, made from the records of Cook county by competent abstract makers; that such abstracts showed a good and indefeasible title, legal and equitable, in complainants; that John Borden, Esq., an attorney at law, was employed by defendant to examine the abstracts so furnished, and he declared the title, as shown by them, good. The bill alleges that defendant entered into possession after the abstracts were so furnished him, and exercised acts of ownership, but contains no allegation as to any defect of title or objection to the abstracts, or that defendant intended to, or did, waive, expressly, or by implication, any objections to the title; nor is any title in complainants stated or relied upon, except a good indefeasible title of record.

The defendant, by his answer, denied the allegation of title in complainants, or that it was declared to be good by said attorney.

On the hearing, the abstracts furnished were produced in evidence, by consent, as showing the state of the title, without accounting for, or the production of, the records. From them it appears that complainants claim to derive title from Walter S. Newberry. The latter, in his lifetime, entered into a contract of sale, and received part of the purchase money, but died before a deed was made, leaving a will appointing Skinner and Blatchford his executors and trustees, authorizing them to sell and convey, lease, or otherwise dispose of, his real estate.

Under this power, the trustees executed a deed January 4, 1871, to Page. It also appeared from the abstracts that Newberry had title of record to only an undivided half—the other appearing to have been in one Robert Campbell.

It also appeared that defendant's attorney, who examined the abstracts, instead of declaring the title good, gave it as his opinion that it was not good of record; that the abstracts showed title in Newberry only to an undivided half, and there was great doubt whether the power given the trustees by his will to sell, convey, and lease, applied to a case where the testator had previously entered into a contract of sale.

The complainants introduced testimony showing that Robert Campbell died in Cooperstown, N. Y., Aug. 30, 1847, leaving a widow and two children; adverse possession in Newberry under the statute of limitations.

The court below dismissed the bill, and complainants appealed to this court, here insisting that although complainants did not have a good title of record, yet a title by adverse possession under the statute of limitations was shown, with sufficient certainty to entitle them to have specific performance of the contract. That appellee, having gone into possession, thereby waived all objections to the title.

Messrs. WILLIAMS & THOMPSON, for the appellants.

Messrs. KING, SCOTT & PAYSON, for the appellee.

Mr. JUSTICE MCALLISTER delivered the opinion of the Court:

The appellants, as vendors, set forth the legal effect of the agreement, which they were asking the court to specifically enforce, to be, that they were to furnish the appellee, the vendee, abstracts of title to the premises, made from the records of the county by competent abstract makers, and if the title thus shown was approved by the vendee's attorney, they were to convey. They allege the furnishing of such abstracts, from which it appeared that their title was good and indefeasible, at

law, and in equity, and that vendee's attorney approved it. There is no allusion to any other title than such a title of record, nor is there any allegation that the vendee intended to, or did, waive all objection thereto ; for they in no respect assume that there was any defect of their record title.    When it turns out that their title of record was defective to the extent of an undivided half of the premises, which must have been known before the bill was filed, and that vendee's attorney did not, in fact, approve, but, on the contrary, condemned their title as shown by the abstract, they claim that, irrespective of their covenant to exhibit and convey a good title of record, irrespective of the allegations of the bill that they, in fact, and in law, had such a title, they were entitled to specific performance under that bill, by showing a title depending upon adverse possession, under the statutes of limitations, or in other words, upon a title based upon extraneous facts, resting in parol.    Where a purchaser has contracted for a good title of record, and, upon a bill filed by the vendor, it appearing that the latter had not such a title as he covenanted to convey, for the court to permit the vendor to establish a title depending upon adverse possession, under the statutes of limitations, and compel the vendee to take that as a substitute for what was contracted for, is, in effect, for the court to make a new contract for the parties, and then execute it.    In the very nature of things, a good title of record to real estate must, under our laws, be more reliable, and consequently more valuable and desirable than one depending upon a variety of extrinsic circumstances, to be established by parol evidence.

This court, in *Brown* v. *Cannon*, 5 Gilm. 182, said, what must be obvious to every one experienced in such matters, that, " Of all known titles to land beyond a mere naked possession, which are *prima facie* good, there is perhaps none, recognized by law, more doubtful and uncertain than those depending for their validity upon an adverse possession under a statute of limitations."

It is enough for the purposes of this case, that a good title of record, and one depending upon parol evidence, are substantially

different.  The motives and fancies of mankind are so various, that the law, which recognizes the right of parties to make just such contracts as they choose, not prohibited, or against public policy, will not call upon a man who has contracted to purchase one thing, to explain why he refuses to accept another.  The title sought to have substituted by the court, for that which the vendors covenanted to give, is not only different, but obviously less marketable and valuable.  The contract, as made by the parties, was definite, equal and fair in its terms.  The moment the proposition is admitted, that the court may substitute any other mode of performance, and a title of a different character, transactions of this character, no matter how definite and fair in their terms as made, lose both the quality of definiteness and fairness.  The purchaser could have no idea, when he contracted for a particular kind of title, that a court of equity would have the authority to compel him to take another and inferior kind of title.  Lord HARDWICKE, speaking of contracts which the court would enforce, said :  "Nothing is more established in this court, than that every agreement of this kind ought to be certain, fair and just in all its parts.  If any of those ingredients are wanting in the case, this court will not decree specific performance."  *Buxton* v. *Lister*, 3 Atk. 386.  " I lay it down as a general proposition," said Lord ROSSLYN, "to which I know no limitation, that all agreements, in order to be executed in this court, must be certain and defined ; secondly, they must be equal and fair ; for this court, unless they are fair, will not execute them ; thirdly, they must be proved in such manner as the law requires."  *Lord Walpole* v. *Lord Orford*, 3 Ves. Jr. 420.

It needs no argument to prove that the substitution by the court of one thing for another, is subversive of the doctrine of the court as to definiteness and certainty in contracts of which specific execution is sought.  There is nothing shown in this case why the purchaser should not have just what he contracted for, viz.: a good title of record to the premises.  If, therefore, the court could disregard the terms of the covenant, and compel

him to take a less valuable title, it would not be fair and just towards such purchaser. So that it would be against the fundamental rules governing courts of equity, to decree the specific execution of the contract in this case in the way proposed. It would be to enforce specific performance by the purchaser, with relief therefrom on the part of the vendors. Such an enforcement of the contract is not of the one made, but of another, with terms framed in the discretion of the court, and therefore not certain and definite; with the substitution of something the purchaser did not agree to take, and therefore not equal and fair. But appellant's counsel say the purchaser cannot insist upon the objections to vendors' title of record. He has waived them by entering into possession, and exercising rights of ownership. But appellee's counsel reply to that, "Why did you come into court with the assertion that you had a good and indefeasible title of record; and, if you intended to rely upon a waiver of objections to title, why did you not apprise us of that purpose, by some allegation in your bill to that effect?"

The bill, it is true, states that the purchaser went into possession and exercised acts of ownership. But it does not say that he thereby intended to, and did, waive all objections to the title, but, on the contrary, asserts a good indefeasible title of record, without any allusion to defects or intention on the part of the purchaser to waive them. It is a well settled rule, that every material allegation must be put in issue by the pleadings; and no interrogatories can be filed, which do not arise from, or relate to, some fact charged in complainant's bill. *Helm* v. *Cantrell et al.*, 59 Ill. 524; *James* v. *McKernon*, 6 Johns. 543; *Woodcock* v. *Bennett*, 1 Cow. 734.

If the waiver depended upon intention, such intention should have been alleged; and if intention be of the essence of it, and not being alleged, the statement of the fact of taking possession and exercising acts of ownership is mere surplusage in the bill; because the latter goes exclusively upon the assumption that the vendors had, in fact, just such title as they covenanted to convey

Is the waiver a question of intention from all the circumstances, or is it an arbitrary presumption from the mere fact of taking possession? It is laid down in 2 Dan. Ch. Pr. 1195, that the acts of taking possession and exercising rights of ownership will not preclude the purchaser from his right to investigate the title, unless the court is satisfied, from them, that he intended to waive, and has actually waived, such right; and when such an inference could not be drawn from those facts, the court will refuse to depart from its ordinary rules.

Again, Sugden says: "The question in each case is one of fact: did the purchaser mean to waive, and has he actually waived, his right of examining the title?" 1 Sugd. on V. & P. (8th Am. ed.) 517; *Burroughs* v. *Oakley*, 3 Swanst. 159; *Dowson* v. *Solomon*, 1 Drew & Sm. 1.

Where a waiver is relied upon, the seller's bill should be so framed as to put that question in issue, or evidence to prove the waiver cannot be received. 1 Sugd. 517; *Clive* v. *Beaumont*, 1 De G. & Sm. 397; *Gaston* v. *Frankum*, 2 ib. 561.

By the contract in this case, no time was fixed for furnishing abstract or making conveyance by vendors, and the vendee was authorized to take possession whenever the house, which vendors were building, was completed. This is an important circumstance upon the question of waiver. Sugden says: "But if possession is authorized by the contract to be taken before a title is made, the fact of possession cannot by itself be used against the purchaser, for that would be contrary to the very terms of the contract." 1 Sugd. on V. & P. 518, § 20.

It is perfectly clear to our minds that, under the bill in this case, appellants could not avail themselves of a waiver. The purchaser was entitled to such a title as the vendors covenanted to convey, and the latter were bound to show, upon the hearing, that they, at that time, at least, had a good title of record. Failing in that respect, the court, as their bill was framed, properly dismissed it; and we must affirm the decree.

*Decree affirmed.*