OGOOSHEVITZ *v*. ARNOLD.

1. FRAUDS, STATUTE OF—CONTRACTS—SUFFICIENCY OF FORM.
   An agreement in writing for a contract for the sale of real estate complies with the statute of frauds where the parties, the property, the price, terms of payment, and time of performance are all definitely fixed.

2. SPECIFIC PERFORMANCE—EQUITY—LAND CONTRACTS.
   A court of equity may specifically decree the performance of an agreement to execute a land contract.

3. EVIDENCE—PAROL EVIDENCE—WRITTEN CONTRACTS—EVIDENCE NOT ADMISSIBLE TO VARY TERMS.
   Where an agreement to execute a land contract is complete in itself and unambiguous, evidence contradicting its provisions, or tending to show that it does not embody all the agreement of the parties, may not be introduced in a suit for specific performance.[1]

4. VENDOR AND PURCHASER — ABSTRACTS — CLEAR TITLE — WHAT CONSTITUTES.
   An agreement by a vendor to furnish an abstract showing clear title is not complied with by furnishing a clear title by prescription, or a title not established of record or one which rests on parol testimony, and can only be complied with by furnishing an abstract showing clear title as it appears of record.

5. EXECUTORS AND ADMINISTRATORS—CLAIMS AGAINST ESTATES—WHEN BARRED—STATUTES.
   The only method by which claims against an estate could be barred, prior to the passage of Act No. 256, Pub. Acts 1915 (3 Comp. Laws 1915, § 14620), barring claims against decedents after the lapse of a certain length of time, was by an appointment of commissioners, or a hearing of claims by the probate judge and the closing of the estate.

6. SPECIFIC PERFORMANCE—WHEN DECREED—ABSTRACTS—CLEAR TITLE.
   Specific performance will be decreed where it is within the power of defendants in a suit for specific performance

[1] On parol evidence as not admissible to vary, add to, or alter a written contract, see note in 17 L. R. A. 270.

of an agreement for a contract of sale of real estate and to furnish an abstract showing clear title to perform the agreement and make a clear title.

7. SAME—TENDER—WHEN NOT NECESSARY.

A tender of the money due by a contract purchaser before . commencing suit for specific performance of the contract is unnecessary where defendants have failed to furnish clear title and tell plaintiff he can take the title offered or nothing and tender a previous payment to him.

8. SAME—NOT REMEDY OF RIGHT—DISCRETION OF COURT.

The remedy by specific performance is not a remedy of right, but rests in the sound discretion of the court.

9. SAME.

The mere fact that the property has increased in value is not a sufficient ground for denial of a decree for specific performance of an agreement for a contract for the sale of real estate.

ON REHEARING.

10. SPECIFIC PERFORMANCE — PERMANENT IMPROVEMENTS — ALLOWANCE.

Where the vendor in a land contract, pending an appeal in specific performance proceedings, made expenditures of a permanent character, but it is not made to appear that there is any balance over and above the value of the use and occupation of the premises, she is not entitled to recover.

11. SAME—INCUMBRANCES—PAYMENT—ALLOWANCE.

The vendor was entitled to be reimbursed the amount of a loan secured by a conveyance of the premises and taking back a land contract, which she paid back pending an appeal, the vendee not having contended that this made the title defective, but having offered to assume it in case a decree passed for specific performance.

Appeal from Wayne; Hosmer, J. Submitted April 11, 1917. (Docket No. 141.) Decided July 26, 1917. Resubmitted October 30, 1917. Former opinion modified December 27, 1917.

Bill by Isaac Ogooshevitz and another against Fred Arnold and another for the specific performance of a

land contract. From a decree dismissing the bill, plaintiffs appeal. Reversed, and decree entered for plaintiffs.

*William Friedman,* for plaintiffs.

*Harrison Geer,* for defendants.

FELLOWS, J. The bill in this case is filed to obtain the specific performance of the following contract:

"DETROIT, MICH., Oct. 31, 1911.

"Received of Isaac Ogooshevitz, the sum of fifty dollars to apply on the purchase money of the following described premises, to wit: House and lot known as 706 Antoine St. Said premises being situated in the city of Detroit, county of Wayne, and State of Michigan. Fred Arnold and Mary Arnold, of the city, hereby agree to sell, and Isaac Ogooshevitz, of the city, hereby agrees to purchase, the above-described premises for the sum of $3,800.00, thirty-eight hundred dollars, of which the sum of fifty dollars to be paid on signing of this agreement, and the sum of four hundred fifty dollars to be paid upon delivery of a land contract and the balance of the purchase price to be paid as follows: Seventy-five dollars or more, with interest payable every six months, interest at 6% per annum. Possession of premises to be given not later than Jan. 1, 1912. Purchaser is to receive a Burton or Union Trust Company abstract, brought down to date, showing clear title. Said purchaser to pay $200.00 to apply on purchase price within 60 days after land contract is delivered; deal to be closed when possession is given by Jan. 1, 1912.

[Signed]         "FRED ARNOLD.      [L. S.]
                 "MARY ARNOLD.      [L. S.]
                 "ISAAC OGOOSHEVITZ. [L. S.]
"Witnessed by
  [Signed]  "CARL SINGER.
            "JACOB SHEWITZ."

A one-half interest in this contract was assigned by plaintiff Isaac Ogooshevitz to plaintiff Ida Ogooshevitz, his wife, prior to filing this bill. The answer

alleges neither fraud nor mistake. Less than two weeks after the execution of the contract the defendants furnished plaintiffs a Burton abstract brought down to date. This abstract showed the state of the title, so far as important here, to be as follows: Albert Polansky acquired title June 27, 1871. He died testate. Petition for probate of his bill was filed January 24, 1878, and it was admitted to probate February 25, 1878. The property in question was devised to his wife, Mary Polansky, and she was nominated and appointed executrix. No bond was filed by her as executrix, no commissioners on claims were appointed, and the estate was never closed; in fact, nothing was done, except the admission of the will to probate. Mary Polansky devised the property to defendant Mary (Polansky) Arnold. Mrs. Arnold deeded the premises to one Gayman, and took a land contract back from him. This was to secure a loan of $1,300. Mr. Ogooshevitz submitted the abstract to his attorney, who examined it, and found some minor defects, which were not deemed important, but advised that commissioners on claims ought to be appointed in the estate of Albert Polansky, and the estate closed. There is some conflict in the testimony, but we are satisfied that the abstract was returned to the defendants with the request that this defect be cured, and that soon thereafter, and in the latter part of November, defendants tendered to Mr. Ogooshevitz the abstract, which he, under the advice of counsel, claimed did not show a good title; that defendants refused to clear up the defect pointed out by plaintiffs' attorney, gave plaintiff to understand that they would go no further with the deal unless he accepted the title and abstract as it stood, and tendered him back the $50 he had paid on the contract, which he refused to accept; that a couple of days after that plaintiffs' attorney wrote them, stating that Mr. Ogooshevitz

was ready to carry out the contract and requesting performance on their part. It is in conflict whether another tender and refusal of the abstract was made; but soon thereafter this bill was filed, asking that defendants be required to enter into a land contract, plaintiffs offering performance of their part of the agreement on making out a clear title, as provided in the contract. The trial court found that the actual contract between the parties was not embodied in the written instrument, and that the claimed defect in the abstract did not justify refusal to accept the title offered, and dismissed the bill. Plaintiffs appeal.

There is nothing ambiguous about the contract between these parties. It complies with the requirements of the statute of frauds. The parties, the property, the price, the terms of payment, the time of performance, are all definitely fixed. True, it provides for the execution of a land contract; but a court of equity may specifically decree the performance of an agreement to execute a land contract. *Brin* v. *Michalski*, 188 Mich. 400 (154 N. W. 110). The contract being complete in itself, unambiguous, certain in its terms, no fraud or mistake being alleged in the pleadings, it was error to receive evidence contradicting its provisions, or tending to show that it did not embody all the agreements of the parties. We have so recently considered this question in a case for specific performance, where we discussed the question and cited authorities, that we content ourselves with citing that case. *Smith* v. *Mathis*, 174 Mich. 262 (140 N. W. 548). The agreement above set forth is therefore the contract, and the only contract, before us for consideration.

By the terms of this contract defendants agreed to furnish an abstract showing clear title. This provision was not complied with by furnishing a clear title by prescription, or a title not established of record,

or one which rests on parol testimony. A clear title as matter of record, and as shown by abstract, is one thing; while a clear title by prescription, made good by the statute of limitations, and presumptions which may arise from undisputed possession, and shown by parol testimony, is another thing. They are by no means synonymous terms. We know, as matter of common knowledge, that, in buying and selling real estate, abstracts are usually desired by the purchaser, in order that they may be submitted to those skilled in the law for an opinion as to their validity. A clear title, as matter of record, is much more desirable, much more valuable, much more salable, than one depending for validity upon the testimony and memory of witnesses. A clear title, shown to be such by an abstract and resting on the record, was one of the valuable considerations of this contract. It was what the parties contracted for, and the obligation to furnish it was not discharged by furnishing any other title. *Ford* v. *Wright,* 114 Mich. 122 (72 N. W. 197); *Page* v. *Greeley,* 75 Ill. 400; *Taylor* v. *Williams,* 2 Colo. App. 559 (31 Pac. 504); *Constantine* v. *East,* 8 Ind. App. 291 (35 N. E. 844); *Spooner* v. *Cross,* 127 Iowa, 259 (102 N. W. 1118); *Fagan* v. *Hook,* 134 Iowa, 381 (105 N. W. 155, 111 N. W. 981); *Brown* v. *Widen* (Iowa), 103 N. W. 158; *Howe* v. *Coates,* 97 Minn. 385 (107 N. W. 397, 4 L. R. A. [N. S.] 1110, 114 Am. St. Rep. 723); *Horn* v. *Butler,* 39 Minn. 515 (40 N. W. 833); *Bruce* v. *Wolfe,* 102 Mo. App. 384 (76 S. W. 723); *Crosby* v. *Wynkoop,* 56 Wash. 475 (106 Pac. 175); *Zunker* v. *Kuehn,* 113 Wis. 421 (88 N. W. 605); *Noyes* v. *Johnson,* 139 Mass. 436 (31 N. E. 767); *Kane* v. *Rippey,* 24 Or. 338 (33 Pac. 936). It was said by the court in *Page* v. *Greeley, supra:*

"Where a purchaser has contracted for a good title of record, and, upon a bill filed by the vendor, it appearing that the latter had not such a title as he cove-

nanted to convey, for the court to permit the vendor to establish a title depending upon adverse possession, under the statutes of limitations, and compel the vendee to take that as a substitute for what was contracted for, is, in effect, for the court to make a new contract for the parties, and then execute it. In the very nature of things, a good title of record to real estate must, under our laws, be more reliable, and consequently more valuable and desirable, than one depending upon a variety of extrinsic circumstances, to be established by parol evidence."

The supreme court of Iowa, in *Brown* v. *Widen, supra,* very tersely stated:

"The contract called for an abstract showing good title, and nothing less than this would satisfy the condition, no matter what the vendor's real title might be."

Mr. Justice Ladd, speaking for the court in *Fagan* v. *Hook, supra,* said:

"The title may be good; but one to whom an abstract showing good title has been promised as a condition precedent is not bound to accept any evidence thereof, except that contained in the abstract. The vendee in such a case is not required to accept or rely on parol evidence of title, or information *dehors* the records, or the word of the vendor. That the title was not only to be good, but that the abstract was to so exhibit it, was a valuable consideration in entering into the agreement; for every one recognizes the superior salability of land with good paper title."

Under the contract the defendants had agreed to furnish an abstract showing a clear title; if the abstract did not show a clear title, it was inadmissible to show by parol proof that their title was a clear one. If the abstract did not show a clear title, it was proper for the plaintiffs to request that the defect be cured, and the duty of the defendants to cure it. It was within their power. Mrs. Arnold was the grand-

197—Mich.—14.

daughter of Albert Polansky, and under the circumstances of the case might have proceeded to have the estate of her grandfather closed in the regular way; this she refused to do.

It is urged with considerable vigor that the abstract does show a clear title, and that plaintiffs should have accepted it; that the lapse of time has been so great that it must be conclusively presumed that there were no debts against the estate of Albert Polansky. The lapse of time may raise a strong inference that there are no debts; but, in the absence of a statute of limitations, there is no such conclusive presumption. Our attention has been called to no statute, and we are unaware that any existed prior to Act No. 256, Pub. Acts 1915, 3 Comp. Laws 1915, § 14620 (passed since this case was heard in the court below), barring claims against decedents in the absence of the appointment of commissioners on claims, or the substitute therefor—a hearing of claims before the probate judge, and a closing of the estate. Several cases are cited by counsel in which this and other courts have held that a title by adverse possession is a merchantable title. We have already shown that the defendants here contracted to furnish an abstract showing clear title, and did not contract to furnish a merchantable title growing out of adverse possession. But all these cases holding that a merchantable title may be acquired by adverse possession are bottomed on the statute of limitations. The title ripens when, and only when, the statutory period has run. The bar to the action is the limitation of the statute, and where no statute of limitation is found the bar does not exist. As to claims against the estates of decedents, not only was there no statute of limitations at the time of this transaction, but the statute expressly permitted a creditor to revive the commission "at any time before the estate is closed." Section 11084, 4 How. Stat. (2d Ed.), (3 Comp. Laws

1915, § 13870). This was an absolute right; the application may be made *ex parte* and without notice, and exists as long as the estate is not closed. *Bresler* v. *Wayne Probate Judge,* 152 Mich. 167 (115 N. W. 960) ; *Hart* v. *Shiawassee Circuit Judge,* 56 Mich. 592 (23 N. W. 326) ; *Heavenrich* v. *Nichols' Estate,* 113 Mich. 508 (71 N. W. 852) ; *Pratt* v. *Houghtaling,* 45 Mich. 457 (8 N. W. 72).

One who buys land from heirs or devisees before the estate is closed takes it subject to the debts and expenses of administration. *Armstrong* v. *Loomis,* 97 Mich. 577 (56 N. W. 938), and authorities there cited. There is a way provided in the statute for foreclosing claims against estates of decedents, viz.: Appointment of commissioners, or a hearing of claims by the probate judge, and closing the estate; prior to the act of 1915 this was the only method by which they might be barred.

The abstract in the instant case showed that this had not been done. The title, as shown by the abstract, therefore, was not free from reasonable doubt. It was within the power of the defendants to remove this doubt, to perform their contract, to make clear the record title; in such case specific performance may be decreed. *Brin* v. *Michalski, supra.*

It is insisted that plaintiffs should have tendered for execution a land contract and the money before the suit was brought, and that tender of performance in the bill is not sufficient. An examination of the authorities cited above will show that, in those cases where the question of tender arose in cases growing out of a contract to furnish an abstract, the furnishing of the abstract is a condition precedent to the execution of the contract and the payment of the money. But it is unnecessary for us to go further than to say that in the instant case we are satisfied that defendants refused to go further with the deal unless plain-

tiffs accepted the title offered, and so stated to Mr. Ogooshevitz; that they gave him to understand that he could take the title offered or nothing, and to further show that the deal was off they tendered him the $50 paid on the contract. The law does not require a needless thing to be done. A tender would have been fruitless; under such circumstances it was unnecessary.

The remedy by specific performance is not a remedy of right, but rests in the sound discretion of the court. The only ground urged by defendants, upon that discretion in this case, is an increase in the value of the property. This appears in the brief for defendants, but not in the record. If we should accept the statement in the brief, it would not be sufficient grounds to refuse a decree for specific performance. *Cotharin* v. *Knoch*, 99 Mich. 322 (58 N. W. 380).

The decree of the court below is reversed, and one here entered in conformity with the prayer of the bill, with costs of both courts to plaintiffs.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.

### ON REHEARING.

FELLOWS, J. An application for a rehearing on the merits was filed in this case, together with affidavits and a counter affidavit upon the question of delay, and an accounting to defendant Mrs. Arnold for certain payments and expenditures made by her since the bill was dismissed in the court below. We denied the application for rehearing on the merits, but granted a rehearing on the question whether "any credits should be allowed defendant Mrs. Arnold. If so, how much?"

This case was heard in the court below, and the bill was dismissed April 23, 1914. It was heard in this court April 11, 1917. For this delay of nearly

three years neither party is entirely blameless. During this period Mrs. Arnold made expenditures on the premises, some of which are of a permanent character. It is insisted by her counsel that an allowance for these sums, together with interest on the land contract, should be made. But it also appears that she has had the use and occupation of these premises, and it is not made to appear that there is or could be any balance due her over and above the value of such use and occupation. Both counsel have furnished us with citation of many authorities and discussed at some length the legal rules to be enforced. The difficulty, however, which we encounter grows out of the paucity of facts to which the legal rules may be applied. Upon the state of this record we cannot make an allowance for these items.

One item paid by Mrs. Arnold since the case was heard in the court below is sufficiently definite. A reference to the original opinion will show that Mrs. Arnold had deeded the premises to one Gayman and took a land contract back; that this was done to secure a loan. The record shows that at the beginning of the hearing in the court below plaintiffs' counsel stated with reference to this:

"I will say right now we are willing to take it subject to that now. We never made any question about that."

It was not claimed either in the court below or in this court that this condition made a defective title. Plaintiffs' testimony negatives such conclusion, and shows that plaintiffs recognized the validity of this obligation and assumed it in case decree passed for specific performance. The motion for rehearing shows, and it is supported by affidavit, and not denied, that Mrs. Arnold has since the hearing in the court below paid off this obligation. She should be reimbursed the money so paid. We have not the exact amount

before us, but upon the settlement of the decree it may be ascertained. When paid it shall be endorsed as a payment on the purchase price. No costs will be allowed on this rehearing.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.