MARY M. NOYES *vs.* SAMUEL JOHNSON.

Suffolk.    March 13. — June 19, 1885.    W. ALLEN, COLBURN, & HOLMES,
                    JJ., absent.

A contract for the sale of land provided that ten days were given to examine the
    title, and that if, upon examination of the records, it should appear that any
    material thing was necessary to be done in order to perfect the title, which
    the seller was unable to do within a reasonable time, not exceeding sixty days,
    the sale should be void at the option of either party.  *Held,* on a bill in equity
    for specific performance, that the purchaser was entitled to a good record title,
    and was not obliged to accept a title by adverse possession.

BILL IN EQUITY, filed April 21, 1884, for the specific per-
formance of an agreement to purchase land, the terms and con-
ditions of the sale, so far as now material to the case, being
as follows: " Ten days given to examine title, and if, upon
examination of the records, it shall appear that any material
act or thing is necessary to be done or performed, in order to
perfect the title to said premises, which the seller is unable to
do or perform, within a reasonable time, not exceeding sixty
days from date hereof, then the sale to be void at the option of
either party."

The case was heard, and reserved for the consideration of the
full court, by *Field*, J., upon the following agreed statement of
facts :

The land in question is situated at the corner of Nahant Road
and Winter Street in Nahant, and is portions of lots 7 and 8 in
range 7 in the subdivision of Nahant called Great Nahant.   It
was sold by auction by the plaintiff to the defendant, on Sep-
tember 13, 1883, and a contract in writing, the terms of which
are above set forth, was executed by the parties.

The defendant, on being tendered a deed, refused to accept
the same, on the ground that the title to lot 7, being the greater
portion of the premises and embracing the frontage on Nahant
Road, was defective.

The plaintiff has done all required to entitle her to specific
performance, if the title shown by her is such as can be forced
upon a purchaser, and the defendant has done all required to
discharge himself from all obligations under the contract, if the
title shown is not such.

The territory known as Nahant was originally a part of Lynn, and was in 1706 owned by the inhabitants of the town collectively. It was in that year, by a vote of the town, a copy of which is printed in the margin,* divided into lots, and set off and assigned in fee to individual proprietors. After these Nahant lots were so set off, the portion thereof not fenced and occupied by the owners was called the " common pasture," and was managed by an association of proprietors, and records thereof were kept by persons called the clerks of the pasture. Between 1820 and 1850 the ownership of three acres of land in the common pasture entitled a person to the pasturage of one cow, and such right was commonly called a cow lease or right; and such descriptions are not infrequently found in old deeds. Said lot 7, containing two acres and thirty-four poles, was set off in the above division to one Jeremiah Shepard. The children of said Shepard conveyed their homestead lot, with all their father's common lots (without other description of the common lots than that they conveyed all such lots belonging to their father), to one Joseph Jacobs, in 1720. No settlement of said Shepard's estate is found in the Probate Court, and no deed is found of record from said Shepard or his heirs affecting the locus, except said deed to Jacobs; and no deed is found of record from said Jacobs or his heirs, (it being unknown who were the heirs of Jacobs at his decease, or who are his heirs at the present day,)

---

* " At a Legal towne Meeting held in Lyn Aprill 15th. 1706 Voated that all y° undivided Common Lands in y° towne Except the training field & the severall high ways shall be Divided to & among all y° propriators & inhabitants that have Land in the towne of their owne in fee (within fence) the one fourth part of y° same at y° Least up Land & each part of the towns to have their parts therein as near to them as may be thought sutable in Respect of y° Conveniancy of the Wood: and to be Divided by such Rules & in such way & manner as shall be agreed upon by a Committee of three men which shall be Chose by the Towne or any two of them agreeing thereto which three men are to be all Inhabitants of some other Towne or towns: and when such Division shall be made then Each propriators part of Land therein to be Recorded in y° towne Book with y° Buts & bounds & so to be to them their heirs & assignes for Ever with all y° wood timber herbage & all other the privilidges & appurtenances thereunto in any wise belonging; and y° Charg for Doing the same to be paid by Each propriator according to the Number of acres such propriator shall have therein said Committee to Leave Conveniant ways in all places as they shall think fit."

or from any other person, describing the Shepard lot by definite description, until the deed of Caleb Johnson hereinafter referred to, which purports to convey land forming a part of said Shepard lot, although no reference is made in the deed to said lot by name.

The plaintiff's claim of title is as follows: Isaiah Breed's will was proved in 1809 in Essex, and the residue of his estate was devised to his grandsons Moses Breed and Jabez Breed (called junior), on condition of their making certain payments to other legatees. His inventory claimed six acres of pasture land in Nahant, without further description, which were not disposed of by the will except by the residuary clause.

Moses and Jabez Breed, by deed dated January 20, 1818, conveyed three acres of land in Nahant in a different part of the " general pasture " from the locus, with a definite description.

Jabez Breed conveyed to Moses Breed, by deed dated January 21, 1818, " all my right, title, and interest in the general pasture Nahant, conveyed me by grandfather Josiah Breed by his last will and testament, and is by estimation three acres, wherever the same may be found."

Moses Breed conveyed to Caleb Johnson, by deed dated July 28, 1845, " one cow lease in the common pasture on Nahant, comprising three acres of land which I inherited from my grandfather, Isaiah Breed."

Caleb Johnson enclosed a tract of land, being about three quarters of the Jeremiah Shepard lot, and the whole of said lot southwest of Nahant Road, of which the locus is a part, in the fall of 1845, and at that time it bore no marks of having ever been fenced, or of having been used otherwise than as pasturage ground; and he and his grantees have been in open and peaceable possession of the same from that time.

Caleb Johnson conveyed the locus to Artemas Murdock by warranty deed dated April 10, 1854, recorded with Essex Deeds, Southern District, book 494, leaf 50.

The plaintiff's title is under the will of her father, said Murdock, who died March 18, 1882, and she takes whatever title her father possessed; and evidence was duly perpetuated of the giving of notice of the appointment of his executor, who qualified April 17, 1882.

The records of the proprietors of the common pasture show that Moses Breed claimed to be one of the proprietors of the pasture, and acted with them at their meetings and otherwise.

The organization of proprietors was abandoned several years ago, nearly all the land in Great Nahant having become occupied in severalty by the different owners.

No litigation is known to the parties to be pending or threatened affecting the locus, except this suit.

The parties have no knowledge of any person ever having been in possession of the locus other than Caleb Johnson (who died in 1868) and his grantees.

Land at Nahant until within fifty years was of little value, and the proprietors were careless in drawing and recording their deeds.

Between 1819 and 1855, Caleb Johnson took at least eight deeds of land and cow leases in the common pasture Nahant (including said Breed cow lease), without location or definite description.

In 1855, Caleb Johnson recorded in the registry of deeds for Essex county a paper writing, certifying that, having purchased several acres of land in the Nahant pasture, and having good and sufficient deeds of the same bearing different dates, " but not definitely describing the land, only locating it on Nahant," and that, " having ascertained that there are at this time several lots of land on Nahant in the general pasture which are not claimed," he entered upon certain described lots, and took possession of them, as part of the lands purchased by him, by the deeds above referred to. The locus is not described in this paper.

*E. M. Johnson,* for the plaintiff.

*C. H. Fiske,* (*G. A. Dary* with him,) for the defendant.

C. ALLEN, J. By the terms and conditions of the sale, it was implied that the purchaser should have a good title by record. No purchaser could reasonably be held to expect, from these terms and conditions, that a title by adverse possession, depending upon a long and difficult investigation of facts, would be offered to him. The title may be good; but a purchaser under such terms and conditions ought not to be held bound to accept it, and assume the burden of defending it against all comers. *Butts* v. *Andrews,* 136 Mass. 221. *Bill dismissed.*