GEORGE C. RICHMOND *vs.* WILLIAM KOENIG.

June 18, 1890.

**Vendor and Purchaser—Marketable Title.—**The rules announced by this court in *Townshend* v. *Goodfellow*, 40 Minn. 312, *Fairchild* v. *Marshall*, 42 Minn. 14, and *Hedderly* v. *Johnson*, Id. 443,—in respect to the marketability of a title to real property, applied to the facts of this case.

Plaintiff and defendant entered into a written contract for the sale, by the former to the latter, of 400 acres of land at the price of $6,725. The agreement contained this provision: "Transfer shall be made, if title shall be found to be good, on the 11th day of June, 1888. If title is not good and cannot be made good within 11 days, then this shall be void. But if title is good, the party refusing to fulfil his contract shall pay to the other party the sum of $500 as damages." The plaintiff brought this action in the district court for Wabasha county, to recover $500 for defendant's refusal to perform. The defendant, among other things, pleaded that the title of plaintiff was not good by reason of three judgments docketed, respectively, December 31, 1884, February 19, 1885, and April 30, 1885, against one Lyman Gregg, the then owner of the land, the first judgment being for $279.20, the second for $3,100.38, and the third for $116. In his reply the plaintiff admitted the docketing of the judgments, alleged that on November 19, 1884, Gregg made a general assignment of all his property not exempt from execution, for the benefit of his creditors, and has not since had any interest in the land subject to judgment liens. At the trial before *Start*, J., (a jury being waived,) it appeared that plaintiff's title to all the land except 80 acres was derived under this assignment, and that the assignment was not recorded in the registry of deeds. The remaining 80 acres, with the buildings thereon, were acquired by plaintiff by deed from Gregg and wife on April 26, 1888. It was contended by plaintiff that these 80 acres were Gregg's homestead, and therefore not subject to the lien of the judgments. The evidence on this issue is stated in the opinion. The court found that the

judgments were not liens on any part of the 400 acres, and ordered judgment for plaintiff for $500. The defendant appeals from an order refusing a new trial.

*Wilson & Bowers*, for appellant.

*A. Z. Putnam* and *Lloyd Barber*, for respondent.

COLLINS, J. It is evident that the plaintiff cannot recover in this action, unless he was in a position to coerce specific performance by the defendant of the contract involved herein. So that the prominent question in the case, and the only one which needs examination, is whether plaintiff, vendor, had and could have conferred upon the defendant, vendee, a marketable title—one clearly shown to be good, one free from reasonable doubt—to the 80-acre tract of land known as the "Gregg Homestead." If he had such a title, (and the trial court found that he had,) the order appealed from must be affirmed; otherwise it must be reversed. The subject to be discussed has very recently engaged the attention of this court in three important and well-considered cases. In *Townshend* v. *Goodfellow*, 40 Minn. 312, (41 N. W. Rep. 1056,) where the marketability of the title depended upon the existence of a fact about which there was doubt and uncertainty, it was said that where the title must be established by proof of matters of fact not of record, the case must be made very clear by the vendor to warrant the court in ordering specific performance; that while it is not necessary that the title should be shown to be bad, nor is it enough, even, that the court may on the whole consider it good, if there be doubt or uncertainty about it sufficient to form the basis of litigation, the purchaser could not be required to assume the risk and contest that doubt; and, repeating the remarks of the vice-chancellor in *Vreeland* v. *Blauvelt*, 23 N. J. Eq. 483: "A court of equity will not compel a purchaser to take a doubtful title. If there is such an uncertainty about the title as to affect its marketable value, even though a court might consider it good, still the contract may not be specifically enforced." Again, in the case of *Fairchild* v. *Marshall*, 42 Minn. 14, (43 N. W. Rep. 563,) the question was under discussion. There the doubt depended upon a question of law which was being litigated by the parties incidentally. It was therein remarked that a title to be marketable must be free from reasonable doubt; but if

v.43m.—31

it rests entirely upon record evidence, and the muniments of title are preserved and accessible, it will be a question for the court to determine upon their inspection,—a question of legal construction.   The settled doctrine in England was also referred to, but without expressly sanctioning it, as declared in *Bell* v. *Holtby*, L. R. 15 Eq. 178, that when there is a doubt upon the validity of a title arising from a construction of an act of parliament, or the words of an instrument or will, it is the duty of the court to remove the doubt by deciding it, the decision removing the same.   The most recent of the three cases mentioned, and the one most valuable and pertinent here, is that of *Hedderly* v. *Johnson*, 42 Minn. 443, (44 N. W. Rep. 527.)   The doubt as to the marketability of the title therein involved arose upon a question of fact, as it does in the case at bar.   It was there announced as the law that, when the doubt as to the title is raised upon a matter of fact, the question whether it is reasonable or not will not depend solely on the actual existence or non-existence of the fact as it may appear after a trial of it.   If a trial be needed to ascertain it, and especially if its character be such, or if the evidence to show it be such, that it may be decided either way, or if the evidence be not readily accessible to the vendee so that he can establish the fact at any time when called upon, the marketable value of the title must surely be affected.   On the other hand, if there is no doubt as to how the fact is, and it may be easily shown at any time, the title is not rendered doubtful by depending upon it.

It only remains for us to apply these general observations upon the subject of a marketable title to the facts in this case.   The judgments against Gregg—from whom defendant vendor obtained his title on April 26, 1888—were entered and docketed in the months of December, 1884, and February and April, 1885.   Gregg had owned and occupied the premises for many years prior to January, 1878. Having been elected sheriff, he removed at that time with his family to the county-seat, Wabasha, and resided there four years.   He was next engaged in the hotel business at Lake City, in the same county, until August 1, 1884, his wife in charge the latter part of the two years.   About July 1, 1883, he opened a new hotel at Wabasha, and on May 7, 1884, rented and opened another hotel in the same place.

Both houses were kept open until November 1, 1884, when Gregg assigned for the benefit of his creditors. On August 1, 1884, when his lease expired at Lake City, his wife and children, except one daughter, who had supervision of one of the Wabasha hotels, returned to the farm, the 80 acres in question, with an intent to remain. Two months later they joined Mr. Gregg at Wabasha, and have remained there since. The farm was not abandoned or rented, but all of the time it was carried on by Gregg by means of hired help, who occupied his dwelling, except a room or two reserved for the use of himself and his family. The day before making the assignment, October 31, 1884, Gregg duly filed the notice provided for by statute, in which he claimed the 80 acres as his homestead, under the laws of this state exempt from seizure and sale. His rights, if he had any under the homestead law, must be dated from August 1, 1884, the day his wife and family returned to the farm; for there is no pretence that he had not abandoned and lost such rights by his removal to Wabasha, in 1878. Now, while these facts, appearing as they did upon the trial below, may have justified a conclusion that the premises were a homestead and beyond the reach of the judgment creditors, and hence their judgments were not liens, can it be said, under the rules before stated, that the title was a marketable one? It must be borne in mind that whether it is or is not does not depend upon the actual existence or non-existence of the fact as it may have appeared after a trial. Was not the character of the prominent fact in this case such, and did not the evidence show it to be such, that the question of homestead might have been decided the other way? And is the evidence by which this important fact can be established readily accessible to the defendant vendee, so that he can easily show it at any time in the future, should occasion require? Is there not such a doubt and uncertainty about Gregg's homestead rights in the 80 as is sufficient to form the basis of litigation? Are there not debatable grounds presented by this record on which a doubt can be justified? If so, the title should not be declared marketable, although upon a trial, and with the evidence then at hand, a court might hold it good. These judgments are, *prima facie*, liens upon the premises. Each of these judgment creditors might assert a claim, and, should

each do so, three distinct trials would be inevitable in order to finally dispose of the *prima facie* character of the judgments.    The fact that the creditors have not heretofore been heard from is no assurance that they will not be hereafter.    The result of each of these trials would depend upon the ability of this defendant or his assigns to show that, after having abandoned his home upon this land in 1878, residing with his family and voting elsewhere for six years, Gregg became reinvested, so to speak, with a homestead right in the 80 acres, through a return thereto by his wife and children for a period of about two months, in the summer of 1884, while he, to all appearances, kept up and retained a previously acquired and conceded residence in Wabasha, to which place his family went after the few weeks' sojourn upon the farm, and where all have ever since resided. With these facts, the actual existence of the homestead is not free from doubt and uncertainty.    Another court, or a jury, might not arrive at the same result from the evidence as did the court below. We do not wish to be understood as intimating that the homestead rights of Gregg were not established by satisfactory testimony, but, as we have already indicated, the existence or non-existence of the fact does not alone show the title free from doubt.    Again, not only must the fact itself be free from doubt, but it must also be capable of being easily and readily proved at any time when it becomes necessary to prove it.    From the nature (of necessity) of the testimony required to establish the main fact here, it cannot be said that it may be easily and readily proved at some future time.    We conclude, therefore, that the proffered title was not free from reasonable doubt, and that the risk of litigation and embarrassment of a questionable title should not have been cast upon the defendant, vendee in the contract.

Order reversed.