GEORGE C. HOWE v. MARY O. COATES and Others.[1]

March 9, 1906.

Nos. 14,614—(122).

**Vendor and Purchaser.**

A contract for the sale of real estate construed, and *held* to call for a marketable record title.

**Marketable Title.**

A marketable title means a title free from reasonable doubt.

**Defect in Record Title.**

A purchaser will not be compelled to take a title when there is a defect in the record title which can be cured only by resorting to parol evidence.

**Title Open to Doubt not Marketable.**

A title open to reasonable doubt is not marketable, and the court cannot make it so by passing upon an objection depending upon a disputed question of fact, or a doubtful question of law, in the absence of the party in whom the outstanding right or claim is vested.

**Effect on Market Value.**

A title to real estate is not marketable when so defective as to affect the value of the land or interfere with its sale.

Action in the district court for Stearns county to recover from defendants $50,000 paid by plaintiff upon an executory contract for the sale of land, which contract plaintiff elected to rescind on the ground that defendants had failed to tender a marketable record title. The case was tried before Baxter, J., who found in favor of defendants. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*Washburn, Bailey & Mitchell* and *Stewart & Brower,* for appellant.

*Calhoun & Bennett, Taylor & Jenks,* and *Reynolds & Roeser,* for respondents.

ELLIOTT, J.

This is an appeal from an order denying the plaintiff's motion for a new trial. There is little, if any, controversy over the material facts.

[1]Reported in 107 N. W. 397.

It appears that upon March 12, 1902, the appellant, the plaintiff below, and the respondents, entered into a written contract, whereby, in consideration of the sum of $50,000 in hand paid and in consideration of the covenants and agreements therein contained, the vendors granted, bargained, and sold to the vendee (the appellant herein), his heirs, and assigns the exclusive right, privilege, and option to purchase certain lands in Itasca county, Minnesota, known as the "Arcturus Mine," at any time on or before July 12, 1902, for the sum of $750,000. The appellant paid $50,000, which under the contract was to apply upon the purchase price if he elected to consummate the sale. The grantors covenanted that they were the owners in fee simple of the premises, free from all incumbrances, and that they had good right and authority to sell and convey the same. Among other provisions, the contract contained the following:

It is further agreed that the said parties of the first part shall furnish an abstract of the title to said premises to the said party of the second part, as soon as the same can reasonably be obtained, with all tax and judgment certificates necessary to cover any liens that may be upon the said premises, and at all events to furnish the said abstract within the next fifteen days, and that thereupon the said party of the second part shall cause the same to be examined and in case he shall find the title to said property or the record title thereof defective, unmerchantable or incumbered, he shall, within a reasonable time and as near as may be within fifteen days from the date of the delivery of such abstract, notify the said parties of the first part, by notification to said Daniel H. Freeman, mailed to him at St. Cloud, Minnesota, of such defects, and the said parties of the first part shall thereupon proceed to correct and cure such defects as speedily as possible, and at all events shall have such corrections complete on or before June 15, 1902; in case the title to said premises shall be defective and the said parties of the first part shall fail to perfect the same within the time above specified, and they are notified thereof, then this agreement, at the option of the said party of the second part, shall cease and determine altogether, and the moneys hereinbefore provided to be paid, shall be refunded, in

which case there shall be no claim for damages by either party; but the parties hereto may agree upon a further reasonable time for the correction of such title. In case a difference arises between the counsel for the said party of the second part, who may be employed to examine the title to said premises, and the counsel for the said parties of the first part, with respect to any alleged defect in the title or in the record of the title to said premises, as to whether the same is a substantial defect requiring correction within the spirit and terms of this agreement, or as to whether such defects as may have been discovered in the examination of such title shall have been substantially and sufficiently cured, then and in such event the matters of difference shall be submitted to Hon. D. B. Searle and Hon. Homer B. Dibell, two of the judges of the district court of the state of Minnesota, who shall determine the same, failing to agree in which, they may call in a third judge of the said district court within said state, and the decision of the majority shall prevail and be conclusive and binding upon the parties hereto.

It will thus be seen that the respondents agreed to furnish an abstract of title to the property, with all taxes and judgment certificates, within fifteen days after the contract was signed, and the grantee was to have the same examined, and, if he found the title or the record title to be defective, unmerchantable, or incumbered, he should, within a reasonable time, as near as may be within fifteen days from the day of the delivery of the abstract, notify the respondents of such defects, and respondents should proceed to correct and cure such defects as speedily as possible, and in all events have such corrections completed on or before June 15, 1902. It was provided that, "In case the title to said premises shall be defective and the said parties of the first part shall fail to perfect the same within the time above specified and they are notified thereof, then this agreement at the option of the said party of the second part shall cease and determine altogether and the moneys hereinbefore provided to be paid shall be refunded in which case there shall be no claim for damages by either party."

It is further agreed between the parties

> That time is of the essence of this agreement in respect to all matters and things herein by the respective parties hereto agreed to be done and performed.

In case a difference shall arise between the counsel of the respective parties with respect to any alleged defect in the title, or in the record title, as to whether the same is a substantial defect, requiring correction within the spirit and terms of the agreement, or as to whether such defects had been sufficiently cured, then the matters of difference shall be submitted to two district judges of the state, named in the agreement, who shall determine the same, "failing to agree in which they may call in a third judge of the said district court within said state and the decision of the majority shall prevail and be conclusive and binding upon the parties hereto."

Within a few days after the contract was signed the respondents delivered an incomplete abstract of title which had been used in some prior transaction, and requested appellant's attorney to have it brought down to date. The abstract as brought down and completed by the register of deeds at the instance of appellant's attorney disclosed the matters which give rise to the controversy respecting the title and the record title to the property. The alleged defects, so far as of present importance, grew out of the existence of two previous leases which have been referred to as the Foley and Snider leases.

(a) It appeared from the abstract that while Josiah E. Hayward, the ancestor of the respondents, owned the lands in question, he on March 19, 1892, his wife joining, executed and delivered to Timothy Foley and Daniel H. Freeman a mining lease for the greater portion of the land. This lease ran for a period of fifty years from its date. It provided for the payment of a nominal rental until the lapse of a period of five years after a railroad should have been completed to within one mile of the property, and thereafter there should be paid a royalty upon the iron ore mined and removed from the premises. This lease further granted an option for and throughout the full period of the lease to the lessees, their heirs, or assigns to purchase the premises for $100,-000. The instrument was recorded in Itasca county.

The abstract also showed an assignment recorded in the same county

of a four-sevenths interest therein to Josiah E. Hayward, Henry C. Waite, Datus E. Meyers, and Frank E. Searle, and an assignment from these assignees and the original lessees of the entire lease and contract to the Foley Mining Company. No wives joined with any of these assignors in making the assignment. It is admitted that the assignors were all married men at the time of the making of such assignment and their wives were then living. There was nothing upon the abstract or records to show that the rights and interests of these married women, whatever they were, had been acquired or extinguished or surrendered.

There was nothing on the abstract or record to show any surrender or termination of the estate or rights of the Foley Mining Company, except what purported to be a certified copy of a judgment in an action to determine adverse claims brought by the female respondents herein, as plaintiffs, wherein the Foley Mining Company was the sole defendant. The copy of the judgment was recorded February 13, 1899, but the certificate of comparison of the certified copy so recorded was dated February 20, 1899, and the copy of the judgment bore date February 25, 1899. The files in the clerk's office showed that this judgment was not entered in any form in the clerk's office until twelve days after the record of the certified copy in the office of the register of deeds, and that no judgment was ever entered in the Judgment Book in said action unless a judgment in an action entitled Mary O. Coates, Clara H. Freeman, Flora H. Holden, and Jean O. McClure v. Foley Mining Company, was such judgment.

(b) The abstract also showed that on November 29, 1895, the respondents entered into an agreement with one Margaret E. Snider, which was recorded February 17, 1896, whereby, for a valuable consideration, therein acknowledged, respondents sold and agreed to convey to the said Margaret E. Snider, on or before January 1, 1900, the greater portion of the land covered by the contract between the appellant and respondents. This agreement provided that said Snider, her heirs, or assigns should, not later than January 1, 1896, commence explorations on the premises for the discovery of iron ore and prosecute the same with reasonable diligence until either $10,000 should have been expended or four hundred tons of iron ore be discovered in the said premises, or until $10,000 should have been paid on the contract. The agreement provided for deferred payments to be made at different in-

tervals, aggregating $90,000, and for a credit on the purchase price for all iron ore taken out at the rate of twenty five cents per ton, and provided that in the event of default the first parties to the contract might terminate the same by serving notice in writing upon the holder of the contract, first giving sixty days within which to comply with its terms. On March 9, 1897, the respondents caused a notice or declaration to be recorded in the office of the register of deeds claiming a default in the contract in the payment of said sum of $10,000. But there also appeared of record a new and modified agreement in writing entered into between the Arcturus Iron Company and the respondents on or about May 13, 1897, reciting the former agreements and alleged default, by which last agreement, for valuable considerations therein acknowledged, the alleged forfeiture and dissolution were withdrawn and canceled, and the time for the making of the various payments extended, one or more parcels of the premises released and additional payments agreed to be made. It also provided that the same might be terminated by serving notice as provided by chapter 223, p. 431, Laws 1897.

This latter contract appeared of record and was entered on the abstract and was encountered by the appellant in making an examination of the title. There was nothing of record to show any release of this contract or the rights or estate granted thereunder, and the only thing which appeared, or has ever been made to appear, respecting the termination of this contract, or the extinguishment of the rights or estate therein granted, is the record on February 13, 1899, of a notice without date in the office of said register of deeds which recites certain alleged defaults in the making of said payments required by the contract, and specified that the contract should be canceled and determined December 20, 1897, unless the conditions and agreements as to which default had been made should have been complied with on or before that date. Accompanying this notice was proof that it had been published.

The title was examined by Mr. Washburn, as attorney for the appellant, and while engaged in his investigations he was informed by interested parties that they still claimed rights under the Snider contract. On March 5 and 24, and April 5, 1902, he sent letters to Mr. Taylor, the attorney for the respondents, calling his attention to the alleged defects in the record title, and insisting that they were material

and should be cured.　In the latter part of May Mr. Taylor informed Mr. Washburn that "we have concluded to arbitrate."　Thereupon, on May 26, 1902, appellant sent to respondents a communication which contained the following language:

We must insist upon the substantial character of the objections raised and assuredly cannot waive them, and we are extremely anxious, as the time is now growing short, to have the matter determined, and this communication is sent to you for the purpose of bringing to a speedy hearing the reference of these questions before the district judges mentioned in the contract as arbitrators.　The objections raised to the title and to the record title, the character and validity of which are to be determined by such arbitration, are:

1. Whether the interest and estate in said property under a mining lease executed by Hayward and wife, to Timothy Foley and Daniel H. Freeman in 1892, have been extinguished and terminated, and whether the same has been done so as to clear the record title to the premises thereof and of all persons who may claim thereunder, including Foley Mining Company and the wives of Josiah E. Hayward, Henry C. Waite, Datus E. Meyers, and Frank E. Searle.

2. Whether the interest and rights of the Arcturus Iron Company under a certain contract of sale made by you to Margaret E. Snider November 29, '95, and assigned by said Snider to Arcturus Iron Company, have been determined and extinguished and sufficiently determined and extinguished of record' to remove the cloud thereof from the title.　*　*　*

As your counsel has advised my counsel that you desire to arbitrate the validity of these objections, I respectfully ask that you at once arrange for a hearing before the arbitrators at the earliest possible time.

After some further correspondence the parties met at St. Paul June 14, 1902, and submitted their respective claims to Judge Searle and Judge Dibell, the arbitrators named in the contract.　No claim was made on the part of the respondents that they had cured any alleged defects in the title or the record title, but they stood on the claim that

they were not such defects as they were required to cure under the contract; that is, they were not substantial defects. The arbitrators were unable to agree and each prepared and submitted an opinion supporting his views; the last, that of Judge Dibell, being dated July 1, 1902. From this time on plaintiff made earnest efforts to have a third judge selected and a final determination made. The trial court has found that

> The plaintiff and his attorney by letters, telegrams, and oral requests used their utmost efforts and endeavors to obtain a decision by a board of arbitrators as to the defendants' title to the land in controversy; that neither of the judges named as arbitrators in the contract between the plaintiff and defendants' are in fault or in any way responsible for the failure to call in a third arbitrator, or for the failure to have a determination of the question of title arrived at.

The evidence amply supports the conclusion that the appellant used every effort to secure the selection of the third arbitrator, and, waiving the question of the location of the fault, we are satisfied that the appellant was clearly justified in refusing to longer urge the arbitration or rely upon the respondents' right thereto and in seeking to have the question of his rights determined by the courts. On June 17, 1902, the appellant served notice upon the respondents that, as they had failed to comply with the contract in regard to furnishing a perfect title and a perfect record title, he elected to terminate the contract and tendered a proper release of his interest in the lands, and demanded the return of the money which he had paid.

An action to recover the $50,000 which had been paid to the respondents was then brought and resulted in a decision in favor of the defendants therein. The court found, among other things,

> That on March 12, 1902, the defendants, Mary O. Coates, Clara H. Freeman, Jean O. McClure, and Elora H. Holden, were, ever since have been, and now are, the owners in fee simple of the land described in the contract * * * and had during all of said time a good record title thereto and that their title to said land and the record title thereof was not defective, unmerchantable, or incumbered.

The entire case is involved in the correctness of this finding.

1. We are not able to accept the respondents' theory for the construction of this contract. It calls for a title of record, merchantable and unincumbered. The vendors agreed to furnish such a title by June 12, 1902, and the language, as well as the entire structure, framework, and import of the contract, shows that the parties intended to make time of the essence of the contract. The respondents' contention rests upon the assumption that the title was such as they were required to furnish. Assuming this important fact, it is argued that the appellant was required to make his election to purchase the property before July 12, 1902. The contract requires a written notice of the intention to elect to exercise the right to consummate the purchase, and provides that,

> In case the said party of the second part shall elect not to exercise the right and option herein granted to purchase the said premises and not to consummate the purchase thereof, then and in that event the said sum of $50,000, the payment of which is hereinbefore acknowledged, shall be forfeited to the said parties of the first part as liquidated damages and as being a reasonable consideration for this agreement. In case the said party of the second part shall fail to give the notice of his election to purchase hereinbefore provided * * * the same shall be deemed to be an election not to consummate such purchase.

The contract must be read as a whole, giving due force and effect to all its provisions. This provision for the forfeiture of the $50,-000 must rest upon the condition that the vendee has refused, without cause, to consummate the contract. It was, of course, never intended that the money should be forfeited in the event that the vendor failed to furnish a title such as called for by the contract. If the vendor tendered a marketable record title before June 12, 1902, the vendee was required to complete the contract or lose the money he had paid. If the title was not tendered by that date, he had the right to cancel the contract and recover the amount he had paid. The respondents elected to stand upon their title as it was, and under those conditions they were not entitled to a notice giving them further time. Had the arbitration

been determined in favor of the appellant, he would have been entitled to recover his payment; but, if it had been determined in favor of the respondents, the appellant must have carried the contract to completion according to its terms or forfeited the $50,000 which he had paid. The rights of the parties, so far as they depended upon the conditions of the title, were fixed upon June 12, 1902, and all future proceedings, whether before arbitrators or courts, were for the purpose of determining their rights as of that date. The notice given on June 17, 1902, was all that the respondents were entitled to receive under the circumstances and conditions then existing. We confess our inability to grasp the force of the respondents' contention that the appellant is claiming a forfeiture. Nor does the suggestion that he is insisting upon his pound of flesh seem appropriate.

2. As we construe this contract, it calls for an abstract which shows a good title of record in the vendors and which discloses sufficient of record to defeat the claim of any adverse claimant. George v. Conhaim, 38 Minn. 338, 37 N. W. 791. It requires respondents to furnish an abstract of title within fifteen days, and thereafter the vendee must cause the same to be examined, and in case he shall find the title of said property, or the record title thereof, defective, unmerchantable, or incumbered, he shall notify the vendors of the defects.

A somewhat similar requirement was considered in Horn v. Butler, 39 Minn. 515, 40 N. W. 833. The contract there provided: "Abstract of title to be furnished without delay. * * * In case the title shall be ascertained to be unmarketable to such an extent as to warrant the purchaser in refusing the same and shall so refuse the same upon that ground," earnest money shall be returned. The abstract failed to show a good title in the vendor, and the court said: "In determining the marketability of defendant's title to the property described in the contract, in ascertaining the validity of his alleged title, plaintiffs were justified in relying solely upon the abstract furnished by him for their guidance. If it did not disclose his ownership, the marketable character of his title, they were not obliged to examine further or elsewhere. Their refusal to proceed was warranted. It may be the fact that defendant's title was, or could be made, complete, but no provision was made in the contract for the perfecting thereof, should it be found defec-

tive. The marketable character of the title depended on the record, and this would or should be shown by the abstract." Lessenich v. Sellers, 119 Iowa, 314, 93 N. W. 348; Kane v. Rippey, 22 Ore. 296, 23 Pac. 180.

A contract "to convey unto the second party by warranty deed with an abstract showing a good title" refers to the record title which might be epitomized on the abstract. Such a contract calls for a good title on the abstract, or at least of record. Fagan v. Hook (Iowa) 105 N. W. 155; Spooner v. Cross, 127 Iowa, 259, 102 N. W. 1119; Martin v. Roberts, 127 Iowa, 218, 102 N. W. 1126. In Brown v. Widen (Iowa) 103 N. W. 158, the court said: "The contract called for an abstract showing good title, and nothing less than this would satisfy the condition, no matter what the vendor's real title might be." See Boas v. Farrington, 85 Cal. 535, 24 Pac. 787; Noyes v. Johnson, 139 Mass. 436, 31 N. E. 767; Zunker v. Kuehn, 113 Wis. 421, 88 N. W. 605; Heller v. Cohen, 154 N. Y. 299, 48 N. E. 527; Howe v. Hutchison, 105 Ill. 501; Gwin v. Calegaris, 139 Cal. 384, 73 Pac. 851; Bruce v. Wolfe, 102 Mo. App. 384, 76 S. W. 723.

This contract calls for a title good in fact and for an abstract showing a good title of record, but it was evidently not contemplated that the vendee should rely entirely upon the abstract. It was not so construed by the parties. An admittedly incomplete abstract was delivered to the vendee's attorney and accepted by him with the understanding that he would have it brought down to date and made to show the whole record title of the vendors. It was the record title, and not the abstract, upon which the vendee was entitled to rely.

3. A purchaser under such a contract is not required to resort to evidence dehors the record. It is not sufficient that the title is good in fact; that is, capable of being made good by the production of affidavits or other oral testimony. It must be good of record. So even a good title may be unmarketable. Block v. Ryan, 4 App. Cas. (D. C.) 283; Speakman v. Forepaugh, 44 Pa. St. 363; Close v. Stuyvesant, 132 Ill. 607, 24 N. E. 868, 3 L. R. A. 161. As far as the principle is concerned it seems to be immaterial whether the contract authorizes the vendee to rely upon the abstract or the record. In either case he cannot be required to resort to oral evidence. In Fagan v. Hook, supra, the court said: "The title may be good; but one to whom an abstract showing

good title has been promised as a condition precedent is not bound to accept any evidence thereof, except that contained in the abstract. The vendee in such a case is not required to accept or rely on parol evidence of title or information dehors the record, or the word of the vendor." It was, therefore, held that the purchaser was not obliged to accept the title which was bad of record, although capable of being made good by evidence showing adverse possession for the statutory period of time. Carolan v. Yoran, 104 App. Div. 488, 93 N. Y. Supp. 935; Fagan v. Hook, supra; Noyes v. Johnson, supra; Page v. Greeley, 75 Ill. 400; Gwin v. Calegaris, supra; Bruce v. Wolfe, supra; Zunker v. Kuehn, supra.

A title is not marketable where it "depends necessarily upon matter in pais which is in itself a doubtful fact and never can be determined or established except by bringing every party interested into court, certainly others besides the immediate party to the suit for specific performance." Rutherford v. Sanntrock (N. J. Ch.) 44 Atl. 938; Ruess v. Ewen, 34 App. Div. 484, 54 N. Y. Supp. 357, affirmed 165 N. Y. 633, 59 N. E. 1130; Smith v. Death, 5 Madd. 371, 21 R. R. 314. This rule was applied in Austin v. Barnum, 52 Minn. 136, 53 N. W. 1132. The record there disclosed an unsatisfied mortgage, and its date showed that it might have been, and inferentially was, barred by the statute of limitations, but as this might depend upon matters which did not appear of record the title was held to be unmarketable. The action was to recover the money which had been paid under the contract, and the court said: "Because of the mortgage which of record was unsatisfied and undischarged the title was defective, and respondent's right of action accrued. The time for payment of the debt may have been extended by agreement of the parties, or partial payments may have been made, operating to prevent the running of the statute of limitations against the mortgage security; thus keeping it still alive."

Where the vendor is required to furnish a title good in fact and in law, without reference to the record, he may, of course, rest upon the bar of the statute of limitations, provided it clearly appears that the entry of the real owner is barred. Pratt v. Eby, 67 Pa. St. 396. The application of this rule disposes of the respondents' contentions, unless their record title was clearly marketable and unincumbered. We are not

called upon to determine the validity of any claim which may be made by the Arcturus Mining Company or its successors under the Snider contract. It is certainly not clear beyond any reasonable doubt that the rights which were created by that contract were terminated by the giving of the notice provided by chapter 223, p. 431, Laws 1897. If the company was in default when the notice was given, it had a legal right to remove the default within the time limited by the notice. Whether it was in fact in default, and, if so, whether such default was removed, does not appear of record and would necessarily have to be established by oral evidence.

4. The question whether this title was such as was called for by the contract cannot be determined by an examination of the record alone. In Ladd v. Weiskopf, 62 Minn. 29, 64 N. W. 99, 69 L. R. A. 785, and Mathews v. Lightner, 85 Minn. 333, 88 N. W. 992, it was held that a title is not unmarketable when no question of fact is involved, but only one of law arising exclusively upon the construction of a record muniment of title and all the parties in interest are before the court, so that its decision will be a final determination of the matter. But, even if the present case involved only a question of law arising upon the construction of the record, it could not be controlled by this rule because all the parties in interest are not before the court. If this court should hold, for instance, that the claims of the Arcturus Mining Company were cut out by the service of the notice of default, it would not bind that company or its successors in interest. The claimants would be entitled to their day in court, and upon a full hearing a different conclusion might be reached. A vendee will not be required to accept a title on the court's assurance that it is good and marketable and assume the risk of contesting the question in another action wherein the issues of law and fact may be differently determined, by the same or some other court. Townshend v. Goodfellow, 40 Minn. 312, 41 N. W. 1056; Heller v. Cohen, 154 N. Y. 299; Fleming v. Burnham, 100 N. Y. 1, 2 N. E. 905; Brokaw v. Duffy, 165 N. Y. 391, 59 N. E. 196.

5. The distinction which once prevailed as to marketable titles between courts of law and equity no longer exists. An action at law by the vendee to recover back purchase money paid must now be based upon the grounds which would justify a court of equity in refusing to com-

pel him to accept the title. Ladd v. Weiskopf, supra; Moore v. Williams, 115 N. Y. 586, 22 N. E. 233, 5 L. R. A. 654, 12 Am. St. Rep. 844; Brokaw v. Duffy, supra. In Sugden on Vendors (chapter 10, § 3) it is said: "A court of equity is anxious to protect a purchaser and give to him reasonable security for his title, not compelling him to take a title without knowing whether it is good or bad. The inclination of the court is in favor of the vendee and a vendor claiming to be exempted from the general rule is required clearly to establish a case of exception. To enable equity to enforce the specific performance against a purchaser, the title to the estate ought, like Caesar's wife, to be free even from suspicion, for it would be an extraordinary proceeding for a court of equity to compel a purchaser to take an estate which it cannot warrant to him. It has, therefore, become a settled and invariable rule that a purchaser shall not be compelled to accept a doubtful title; and the courts will not have regard to its own opinion only, but will take into account what the opinions of other competent persons may be."

But the standard set by Caesar for his wife is a little higher than the law requires for a title. Street v. French, 147 Ill. 342, 35 N. E. 814. In Vreeland v. Blauvelt, 23 N. J. Eq. 483, Vice Chancellor Dodd said: "A court of equity will not compel a purchaser to take a doubtful title. If there is such an uncertainty about the title as to affect its marketable value, even though a court might consider it good, still the contract may not be specifically enforced. But there must be some debatable grounds on which the doubt can be justified." A marketable title means a title free from reasonable doubt—what Lord Eldon, in Stapylton v. Scott (16 Ves. Jr. 272), called a rational doubt. Austin v. Barnum, 52 Minn. 136, 53 N. W. 1132; Hedderly v. Johnson, 42 Minn. 443, 44 N. W. 527, 18 Am. St. Rep. 521; Richmond v. Koenig, 43 Minn. 480, 45 N. W. 1093; Fleming v. Burnham, supra; Kilpatrick v. Barron, 125 N. Y. 751, 26 N. E. 925; Holmes v. Woods, 168 Pa. St. 530, 32 Atl. 54; Morrison v. Waggy, 43 W. Va. 405, 27 S. E. 314; Downey v. Seib, 102 App. Div. 317, 92 N. Y. Supp. 431; Muller v. Palmer, 144 Cal. 305, 77 Pac. 954; Jeffries v. Jeffries, 117 Mass. 184; Collard v. Sampson, 1 Eq. R. 262; Wilde v. Fort, 4 Taunt. 334, 13 R. R. 616. It means a title which would insure to the vendee the peaceable enjoyment of the property. Barnard v. Brown, 112 Mich. 452, 70 N. W. 1038, 67 Am. St. Rep. 432.

"Every title is doubtful which invites or exposes the party holding it to litigation. If there be color of outstanding title which may prove substantial, though there is not enough in evidence to enable the chancellor to say so, a purchaser will not be held to take, it and encounter the hazard of litigation." Herman v. Somers, 158 Pa. St. 424, 27 Atl. 1050, 38 Am. St. Rep. 851; Corbett v. McGregor (Tex. Civ. App.) 84 S. W. 278; Frazier v. Boggs, 37 Fla. 307, 20 South. 245; Trustees v. Rother, 83 Md. 289, 34 Atl. 843; Daniell v. Shaw, 166 Mass. 582, 44 N. E. 991. But the doubt must be such as affects the value of the land and will interfere with its sale. Vought v. Williams, 120 N. Y. 253, 24 N. E. 195, 8 L. R. A. 591, 17 Am. St. Rep. 634; Schenck v. Wicks, 23 Utah, 576, 65 Pac. 732.

A marketable title means a title "which a reasonable purchaser, well informed as to the facts and their legal bearing, willing and anxious to perform his contract, would, in the exercise of that prudence which business men ordinarily bring to bear upon such transactions, be willing to and ought to accept." Todd v. Union, 128 N. Y. 636, 28 N. E. 504; Hunting v. Damon, 160 Mass. 441, 445, 35 N. E. 1064; Paulmier v. Howland, 49 N. J. Eq. 364, 24 Atl. 268. "A purchaser ought not to be compelled to take property, the possesion of which he may be obliged to defend by litigation. He should have a title which will enable him to hold his land free from probable claim by another, and one that, if he wishes to sell, would be reasonably free from any doubt which should interfere with its market value." McPherson v. Schade, 149 N. Y. 16, 43 N. E. 527; Turner v. McDonald, 76 Cal. 177, 18 Pac. 262, 9 Am. St. Rep. 189; Appeal of Clouse, 192 Pa. St. 108, 43 Atl. 413; Harding v. Olson, 177 Ill. 298, 52 N. E. 482; Heller v. Cohen, 154 N. Y. 299–306, 48 N. E. 527; Irving v. Campbell, 121 N. Y. 353, 24 N. E. 821, 8 L. R. A. 620; Griffith v. Maxfield, 63 Ark. 548, 39 S. W. 852. The purchaser "must get such a title as he can force down upon a repurchaser from him." Magennis v. Fallon, 2 Moll. 578. A purchaser "should not be left upon receiving a deed to the uncertainty of a doubtful title or the hazard of a contest with other parties which may seriously affect the value of the property if he desires to sell the same." Jordan v. Poillon, 77 N. Y. 518, 521. "It has been often held that a title is not marketable where it exposes the party holding it to litigation." Swayne v. Lyon, 67 Pa. St. 436. "The title tendered need not in fact be bad in order

to relieve him from his purchase, but it must either be defective in fact or so clouded by apparent defects, either in the record or by proof outside of the record, that prudent men, knowing the facts, would hesitate to take it." Greenblatt v. Hermann, 144 N. Y. 13, 38 N. E. 966.

In Townshend v. Goodfellow, 40 Minn. 312, 41 N. W. 1056, 3 L. R. A. 739, 12 Am. St. Rep. 736, this court said: "The purchaser is entitled to a marketable title, one clearly shown to be good. It must, therefore, be free from reasonable doubt. * * * It is not necessary that the title be shown to be bad, nor is it enough, even, that the court may on the whole consider it good, if there be doubt or uncertainty about it sufficient to form the basis of litigation; for, if there be a doubt, it cannot be thrown upon the purchaser to contest that doubt. * * * It cannot be said that there is no question or doubt about the title tendered by the plaintiff, and the marketable value of the land will naturally be affected by the doubt and uncertainty resting upon the title. * * * The devisees, including infant heirs, are not parties, and would not be bound by the judgment of the court in this case. A purchaser might, we think, well hesitate to accept such a title, and a court of equity will not compel its acceptance, and cast upon him the risk of litigation and the embarrassment of a questionable title."

Numerous elements necessarily enter into the question of what constitutes a marketable title. In this case the plaintiff's counsel, acting in good faith, guided by ample professional knowledge and with an evident desire to see the transaction consummated, declined to accept the title on behalf of his client. The two arbitrators selected by the parties for their judicial standing, knowledge, and experience were unable to agree upon the questions of law involved. It cannot fairly be said that a title which is thus viewed by able lawyers who have no conceivable motive for reaching a biased opinion is marketable. No reasonably prudent man would accept such a title in the ordinary course of business, especially in a transaction of the magnitude and importance of this, in which the vendee is required to pay three-quarters of a million dollars for the property. The opinion of counsel that a title is bad or unmerchantable may or may not in itself be sufficient to create a doubt which would justify the vendee in refusing to accept it.

There are authorities to the effect that it is not sufficient (see Mont-

gomery v. Pacific, 94 Cal. 284, 29 Pac. 640, 28 Am. St. Rep. 122), but the adverse opinion of counsel is certainly a material fact, and its importance and value in a particular case must depend upon the counsel and the circumstances under which he is acting. See Ladd v. Weiskopf, 62 Minn. 29, 64 N. W. 99, 69 L. R. A. 785. In Walker v. Gillman, 127 Mich. 269, 86 N. W. 830, the court approved the claim that "if the rejection of the title was based upon the good faith opinion of counsel, and if any of the questions involved were doubtful questions of law, defendant was justified in refusing to perform the contract." In Miller v. Bronson, 26 R. I. 62, 58 Atl. 257, it was held that a title to real estate is not a marketable title where a loan company declines to take a mortgage on the property because its counsel will not certify the title. There is ample authority to support this general proposition, although we are not called upon, in this case, to accept it in its entirety. See Moore v. Williams, 115 N. Y. 586, 22 N. E. 233, 5 L. R. A. 654, 12 Am. St. Rep. 844; Kane v. Rippey, 22 Ore. 296, 23 Pac. 180; Harrass v. Edwards, 94 Wis. 459, 69 N. W. 69; Vought v. Williams, 46 Hun, 639; Herman v. Somers, 158 Pa. St. 424, 27 Atl. 1050; McCroskey v. Ladd (Cal.) 28 Pac. 216; Ford v. Wright, 114 Mich. 122, 72 N. W. 197.

Without determining whether the respondents had a title to the land in question which was good in fact, we are satisfied that the record did not disclose a title which was marketable, "merchantable," and unincumbered. There was a serious and reasonable doubt as to whether the interests of the Foley Mining Company, the Arcturus Mining Company, and the inchoate interests of the wives of the assignees of the Hayward contract had been determined and extinguished. These questions were fairly debatable and cast such a doubt upon the title of the vendors as to render it unmarketable. Hedderly v. Johnson, 42 Minn. 443, 44 N. W. 527, 18 Am. St. Rep. 521; Fairchild v. Marshall, 42 Minn. 14, 43 N. W. 563; Richmond v. Koenig, 43 Minn. 480, 45 N. W. 1093. Under the evidence as disclosed by this record no prudent business man could be expected to accept the title, and no court should require him to do so. The risk of litigation and embarrassment of title should not be cast upon the purchaser.

The order appealed from is reversed, and a new trial granted.