# COLIN C. JOSLYN AND OTHERS v. IRWIN-DICK COMPANY.[1]

July 16, 1926.

No. 25,452.

**Money to be paid by vendee on tender of contract can be used by vendors to pay encumbrances.**

1. An earnest money contract called for a payment at a specified time upon a tender of a contract for deed binding the vendors to give a marketable title. There were taxes and liens of record in a less amount than the sum called for. *Held*, following prior decisions, that the vendors had a right to receive and use the money the vendee was to pay to satisfy the encumbrances.

**Vendee had right to rescind because of failure of vendors to record release and to tender contract.**

2. The title was encumbered by a right of way, and within the time specified in the contract the vendors obtained a release thereof, but refused to record the same before receiving the payment stated and did not tender the contract for deed within such time. *Held* the vendee had the right by reason of such refusal to end the negotiations when it did and demand the return of the money paid on the earnest money contract.

**Finding of refusal sustained.**

3. The finding of such refusal is supported by the evidence and is decisive against plaintiffs.

Specific Performances, 36 Cyc. p. 697 n. 74; p. 784 n. 15 New.
Vendor and Purchaser, 39 Cyc. p. 1409 n. 18; p. 1502 n. 79; p. 2008 n. 66.

---

See notes in 4 L. R. A. (N. S.) 1170; 38 L. R. A. (N. S.) 1; 27 R. C. L. p. 482; 3 R. C. L. Supp. p. 1514.

Action in the district court for Hennepin county for specific performance. The case was tried before Dickinson, J., who ordered

[1]Reported in 209 N. W. 889.

judgment in favor of defendant. Plaintiffs appealed from an order denying their motion for a new trial. Affirmed.

C. C. Joslyn and George H. Smith, for appellants.

Wm. E. MacGregor, for respondent.

HOLT, J.

In this action for specific performance findings were made in favor of defendant and plaintiffs appeal from the order denying their motion for a new trial.

An earnest money contract, dated March 21, 1923, was signed within a day or two of its date by the representatives of two estates holding an undivided three-fourths interest in the property, and by the vendee, the defendant. The representatives of the estate owning the one-fourth interest personally owned the other one-fourth, but did not sign the contract as such owners until June 14, 1923. The property concerned is a strip of ground 22 feet wide east and west, and 90 feet deep north and south, fronting south on Lake street in Minneapolis, an alley running along the westerly side thereof. A right of way existed over the north 12 feet of the tract. The contract acknowledged the payment by the vendee of $300 to the Real Estate Abstract Company for the vendors. It provided for the payment of $1,700 additional to the same company for the vendors

"when a legally binding contract for deed is entered into by the parties hereto according to the terms and conditions hereof, time being considered of the essence of this contract. It is understood that a complete abstract of title continued to date is to be furnished to purchaser at the expense of said vendors as soon hereafter as may be, but in any event not more than sixty days from the date hereof, after which thirty days is to be allowed purchaser for examination of title and report on the same to vendors. * * * And if it is not good and cannot be made good within ninety days from the date hereof subject to lease to L. B. Hopper and thirty days' notice to tenant on 2nd floor, and if a contract for deed upon the performance of which purchaser will acquire a marketable title to

said premises subject to said lease is not tendered to purchaser according to the terms hereof within said period, as herein limited, this agreement shall be void and the above mentioned $300 refunded to purchaser. But if said vendors tender such contract for deed during said period, as herein limited, and said purchaser refuses to accept said contract for deed, said $300 shall be forfeited to said vendors. * * * It is understood and agreed by all the parties hereto that delivery of all papers shall be made at the office of said Real Estate Abstract Company in the City of Minneapolis, Minnesota."

It is to be noticed that $300 earnest money was in the hands of the Abstract Company and $1,700 more was to be paid it upon the delivery of the contract for deed. The court found that there were unpaid taxes, certain judgments and attorneys' liens of record against the estate of Anna Barbara Speiss, the owner of the undivided half of the land, which would require more than $1,000 to satisfy, and further that plaintiff "Morrill was at all times unwilling that any of the proportion of the payments due her, or any of the proportion of the payments due the estate of Mary Speiss, be used for the purpose of releasing claims against the undivided interest which Anna Barbara Speiss had owned in said premises." These findings are challenged as not supported by the evidence. We think they are sustained, but are of the opinion that they do not go to defeat plaintiffs' right to specific performance. Although by the earnest money contract each vendor agreed to convey the specific interest held by him, the vendors jointly agreed to pay all taxes then due, and as between them and the vendee all the money paid thereon could be used to pay such taxes, and the evidence is clear that the half coming to the estate of Barbara Speiss would satisfy the judgments against the same as well as discharge from the attorneys' liens. Moreover, the money to be paid the abstract company was for all the vendors jointly and they were all obligated to convey not only their own interest but a marketable title to the whole, which would require the removal of all liens and encumbrances, no matter upon whose interest the same rested. Hence,

if relief was denied plaintiff because of the facts referred to, we think the learned trial court erred. It is to be deemed settled that, as to encumbrances presently payable, the vendee cannot urge defect of title when the money to be paid by him upon the delivery of the contract or deed conveying clear title is sufficient to satisfy such encumbrances. The payment of the taxes and judgments could be made in the proper county offices without delay and the releases of the attorneys' liens properly executed were in the hands of the abstract company to be recorded as soon as the vendee paid the $1,700, out of which such liens could be discharged. Lynch v. Higgins, 154 Minn. 151, 191 N. W. 422; McChesney v. Oppek, 156 Minn. 260, 265, 194 N. W. 882; Paynesville Land Co. v. Grabow, 160 Minn. 414, 200 N. W. 481.

Two findings of controlling importance assailed as unsupported, are to the effect that (1) plaintiffs after receiving notice of defects in the title neglected to perfect it and refused so to do, whereupon defendant terminated negotiations, and (2) that plaintiffs, although they executed and delivered the contract for deed called for by the earnest money contract to the Abstract Company on August 18, 1923, never tendered the same to defendant.

Upon this record it must be held that on September 25, 1923, when defendant notified plaintiffs that negotiations were at an end, documents were in the hands of the abstract company which if recorded would have made the title of plaintiffs marketable. The attorney for defendant however testified that the release of the right of way had never been exhibited to him, although the releases of the attorneys' liens and satisfaction of the judgments had been. As already stated, the money in the hands of the abstract company with that to be paid it by defendant would satisfy and discharge the judgments, liens and taxes. A plausible excuse for not recording the orders of the probate court confirming the sale may be found in the fact that the orders existed of record in the court, and also that the same were a part of the writings transferring the premises from the vendors to the vendee and not a conveyance in the vendors' chain of title. But the release of the right of way was necessary to a marketable title in the vendors and we see no reason for the

refusal to record the same. Strictly, the title could not be held marketable until that was done, or until it was tendered defendant with the contract and recording fee paid. If the testimony of the attorney who acted for defendant be true, that the one who acted for plaintiffs positively refused to make the title marketable by recording the release referred to before the $1,700 was paid, we think it justified the withdrawal of defendant from further negotiations or efforts to complete the deal.

It is claimed by appellant that the time upon which the earnest money contract went into effect was not on its date, but on June 14, 1923, the day on which it was signed by the Morrills binding their personal interest in the premises. This should be the correct view, held accepted by defendant; for, as said, the abstract was received without objection, examined and reported on upon the assumption no doubt that not until June 14 was the earnest money contract signed and delivered, hence the 90 days' time therein specified as of the essence of the agreement expired September 14, 1923. The record discloses no act of waiver of time after that date by defendant. So the authorities cited upon the effect of waiver of time have no application here.

The real question is whether the failure and absolute refusal of plaintiffs to perfect a marketable title by recording the release within the time fixed (on or before September 14, 1923), terminated the earnest money contract, or left it so that thereafter defendant was not obligated to perform. Unquestionably that contract provided for a marketable title in the vendors when the contract for deed was to be tendered and the $1,700 paid. Since possession was to be retained by the vendor, the vendee could not be protected unless a contract for deed was recorded showing a clear marketable title in the vendors. Each party was here represented by able lawyers who acted advisedly. There was no effort to mislead. Plaintiffs understood perfectly the position defendant took in insisting that the vendors must have a good title of record when the $1,700 was paid and the contract for deed delivered. There had been protracted litigation between those interested in the Speiss estate, and evident

difficulty in getting the different owners to unite in the sale to defendant. Either because of distrust between the vendors or because the vendee suspected a disagreement and further litigation, the earnest money contract provides for the payment of the purchase price to the abstract company, but it is to be noted that the company was not made the escrow holder of the instruments to be executed to cure the defects in the title, nor was it made the agent of the vendee so that a tender or delivery of the contract for deed could be made to it in behalf of the vendee. The office of the abstract company is merely made the place for such delivery and tender.

The trial court could find that on September 4 defendant's attorney informed plaintiffs that the defects in the title must be "corrected and corrected of record." The response was: "All we have to do is to file the papers with Jenkins (the abstract company's manager)." The attorney for defendant further testified:

"Well, I said, that is not true. The papers that pertain to the title must be filed of record before they can be considered. All that the last sentence or paragraph of [the earnest money contract] means is that the papers by which the title is passed from the plaintiffs to the defendant are to be passed at the abstract company's office and the same is true of the money. * * * It does not pertain to anything else, and we are not going to accept papers for the purpose of curing defects unless you record them. * * * We have no assurance that they will be recorded because we do not know what the Morrills' attitude will be towards you or what yours will be towards them. Just the moment that money gets into Jenkin's hands it may be tied up. We won't take the chance."

He also testified that up to September 24 defendant thought the title might be perfected, but that on that day after a telephone communication with plaintiffs' attorney, Mr. Joslyn, wherein the latter positively refused to cure the defects of record until the $1,700 was paid, the defendant determined to terminate negotiation and so notified him by letter the next day. Mrs. Morrill also admitted that she gave instructions not to record the papers that would

clear the title until the $1,700 was paid. We think, under the contract in question, defendant had the right to insist on the release of the right of way being of record before accepting the contract for deed and paying the $1,700. And the court upon sufficient evidence having found that plaintiffs had refused so to do, defendant was within its rights in terminating the agreement and demanding the return of the money paid.

Refusal of the vendor to make his title marketable by recording a conveyance he has, must be at least from the vendee's standpoint equivalent to inability to secure a conveyance that would make it so, and either event should give the vendee the right to end the deal and obtain what he has paid thereon. He should not in that situation be forced to enter upon the expense of a suit for specific performance unless he so elects. And equity under that situation should not come to the relief of the vendor. The testimony of the attorney for defendant that he insisted on the record showing clear title before payment of the $1,700, and that plaintiffs refused to do so is flatly denied by their attorney. But it was for the trial court to find who was right, and the finding being that there was such a refusal to file the release of the right of way the conclusion must follow that specific performance was rightly denied. Plaintiffs had not removed that defect in the title within the time limited by the contract, and defendant was not required to wait longer for plaintiffs to change their minds. At no time was time waived for curing the defect. And none was needed, for plaintiffs had it confessedly within their power to clear the same, but obstinately refused to do so.

This case is controlled by the finding of fact referred to, and the numerous authorities cited by both parties as to the law need not be discussed. The following may be noted as involving some features similar to the situation here, and to that extent helpful: George v. Conhaim, 38 Minn. 338, 37 N. W. 791; Horn v. Butler, 39 Minn. 515, 40 N. W. 833; Ladd v. Weiskopf, 62 Minn. 29, 64 N. W. 99, 69 L. R. A. 785; Joslyn v. Schwend, 85 Minn. 130, 88 N. W. 410, 744; Howe v. Coates, 97 Minn. 385, 107 N. W. 397,

4 L. R. A. (N. S.) 1170, 114 Am. St. 723; Brown v. California & W. L. Co. 145 Minn. 432, 177 N. W. 774; McChesney v. Oppek, supra.

The second finding challenged, that there was no tender of a contract for deed, is unquestionably true. There was no offer of the contract to defendant personally. The delivery of the same to the abstract company, with notice to defendant, was not under the provisions of the earnest money contract a tender to defendant. This however would not have been defense if defendant had not the right to put an end to the earnest money contract for the failure to clear the title within the time stipulated. Having such right, as already held, the tender of the contract for deed becomes unimportant.

In view of the controlling effect of the well supported finding of fact that plaintiffs refused to remove the defect in the title because of the right of way within 90 days from June 14, the time which plaintiffs plead as the date the earnest money contract was executed and from which date they allege the time was to be reckoned, the other findings assailed and the amended findings requested need not be considered.

The order is affirmed.