Christ Becker, Appellee, v. F. O. Erickson Company, Appellant.

Gen. No. 14,021.

1. REAL PROPERTY—*what justification for refusal to perform contract to purchase.* Inability of the vendor to convey a good title justifies a refusal by the vendee to carry out his contract to purchase. A good title cannot be conveyed if a doubt exists so as to make it probable that the purchaser's rights may be a matter of legal investigation, or if the title depends upon facts which can only be established by parol evidence should the title be attacked, and the purchaser will not in general be compelled to complete the purchase.

2. INSTRUCTIONS—*when errors will not reverse.* Errors in instructions which do not result in harm are not ground for reversal.

Assumpsit. Appeal from the Superior Court of Cook county; the Hon. HOMER ABBOTT, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Affirmed. Opinion filed July 14, 1908.

Statement by the Court. This is an action brought by appellee to recover money alleged to have been improperly paid to appellant by a third party by whom it is said to have been held in escrow.

On the 8th of March, 1905, an agreement was made and entered into between appellant F. O. Erickson Company, a corporation, Aaron Fried and others, parties of the first part, with appellee, party of the

second part, wherein the parties of the first part agreed
to sell "the entire stock, business, property, good will,
leases, rights and interests of said F. O. Erickson
Company," and it was further agreed that the parties
of the first part should execute on or before March 13,
1905, "all bills of sale, assignments and other papers
necessary to transfer said goods, business, property,
good will, leases, rights and interests of said F. O.
Erickson Company to said second party." It was
further provided in the agreement that the parties
thereto other than the corporation appellant here
would assign their several shares and certificates of
stock in the said corporation to said second party on
or before said March 13, 1905. The contract states
that "to secure the faithful performance on his part
of this agreement and of the covenants and agree-
ments therein contained by him to be performed said
second party has paid the sum of $1,000 earnest
money."

The declaration sets up the written contract and al-
leges it was agreed that the one thousand dollars to be
paid as earnest money should be evidenced by a check
for that sum payable to the order of appellant, to be
placed in escrow with Keith Brothers & Company, and
that it was agreed "that said Keith Brothers & Com-
pany should hold said check until all the bills of sale,
assignment and other papers necessary to transfer the
aforesaid goods," leases and other rights and inter-
ests had been properly made and delivered by said
Erickson Company to the plaintiff and "the lease to
said aforesaid premises had been properly assigned
and delivered and the possession of the premises been
duly given to the plaintiff" and the Erickson Com-
pany "had in all respects fully performed its part of
the aforesaid contract." It is further averred that in
case the Erickson Company should "in any manner
fail to perform and fulfill its part of the contract,"
then said check should not be delivered to said Erick-
son Company, but should be re-delivered to the plaint-

iff—appellee herein—by said Keith Brothers & Company. It appears, however, that the check was within a few days turned over by Keith Brothers & Company to appellant, by whom it was collected. This suit is brought to recover the money alleged to have been thus improperly paid, the plaintiff claiming that the defendant Erickson Company failed to comply with its said contract in that the defendant Erickson Company failed to make a valid assignment of the lease of the premises which by the contract it had agreed to assign to appellee.

It appears that the lessors of the premises refused to permit the lease to be transferred to appellee for the unexpired term ending, it is said, April 30, 1906. The lease contained a provision in and by which the lessees agreed ''not to sublet the same or any part thereof without in each case the written consent of the party of the first part   *   *   *   of the interest in said premises acquired through this lease.''

KICKHAM SCANLAN, for appellant.

C. H. SEPPEL, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is contended on the part of appellant that under the terms and provisions of the written contract appellant was not required to obtain the consent of the lessor or his agents to the assignments of the lease in question. With this contention we are unable to agree. A contract to assign a lease the unexpired term of which is for a period greater than one year is a contract to convey an interest in or concerning lands. In Chicago Attachment Company v. Davis S. M. Co., 142 Ill. 171-180, it is said that the statute of frauds and perjuries (chap. 59 R. S.) ''not being limited to the creation of an estate but including every contract 'for the sale of   *   *   *   any interest in or

concerning' lands for a longer term than one year,''
would seem as clearly as it is possible for language
to express that idea, to include the sale by the tenant
of the remainder of his term, provided only that re-
mainder is for a longer term than one year. It is
further said that an assignment of a term is the trans-
fer of the whole estate of the tenant therein to a third
person. It is held in McGuire Bros. v. Blanchard, 107
Ia. 490-493, that ''the legal effect of contracts to sell
and convey land is generally to require the vendor to
make a good title,'' and every purchaser of real estate
is entitled to a marketable title, free from encumbrance
and defects, unless he expressly stipulates to accept
a defective title. In the case at bar the written con-
tract in legal effect required the transfer of a good title
to the lease and to the premises therein conveyed. It
is said in Harrass v. Edwards, 94 Wis. 459-463: ''The
plaintiff as a purchaser could not be required to ac-
cept a defective or unmarketable title. He had an un-
doubted right to a good title, and while a title may be
good, yet if there is reasonable doubt of its validity,
the purchaser is not obliged to take it, and so it fol-
lows that a title may be valid and yet not marketable.
A material defect in the title to land is such a defect as
will cause a reasonable doubt and just apprehension
in the mind of a reasonably prudent and intelligent
person acting upon competent legal advice, and prompt
him to refuse to take the deed at a fair value.'' It
is apparent from the evidence and not contradicted
that there was grave doubt as to whether or not, with-
out the consent of the lessor, appellee could acquire a
valid title by a mere assignment of the lease by the
Erickson Company, and if a doubt exists so as to
make it probable that the purchaser's rights may be a
matter of legal investigation, or if the title depends
upon facts which can only be established by parol evi-
dence should the title be attacked, the purchaser will
not in general be compelled to complete the purchase.
In Vought v. Williams, 120 N. Y. 253-257, it is said

that a marketable title is one that is free from reasonable doubt and that there is reasonable doubt when there is uncertainty as to some material fact relating to the title or interfering with its sale; that "a purchaser is not to be compelled to take property possession of which he may be compelled to defend by litigation. He should have a title that would enable him to hold his land in peace." It is apparent from the evidence that the appellant failed to convey a good title to the leasehold premises in question, such as by the terms of his contract the appellee was entitled to receive. Under these circumstances, appellee was not bound to carry out his part of the contract and pay the purchase price, and appellant was not entitled to forfeit and retain possession of the one thousand dollars earnest money paid by appellee.

It is urged by appellant's counsel that the trial court erred in giving to the jury the following instruction:

"The court instructs the jury that if you believe from the evidence that the defendant, F. O. Erickson Co., agreed to assign to the plaintiff the lease introduced in evidence and that Aaron Fried told the plaintiff that the lessor or his agents would consent to such assignment as testified to by the plaintiff, and that the plaintiff relied thereon, then it became and was the duty of said defendant under such assignment to obtain the written consent of said lessor or his agents to such assignment."

The instruction is undoubtedly erroneous. The suit is brought upon a written contract. In and by that contract the defendant Erickson Company agreed to assign to the plaintiff the lease, and it was under obligation to convey a sufficient title. This obligation was not dependent upon statements which Fried may have made, but was created by the written instrument. The conclusion of the instruction, however, that it was the duty of the defendant under such assignment to obtain the written consent of the lessor or his agents, is not incorrect, in view of the evidence, and the error

referred to was not harmful to appellant, nor do we find reversible error in other instructions complained of.

The contention that appellee waived the right to insist upon appellant's compliance with the contract as to the lease, is not justified by the evidence.

There is evidence tending to show that the lease in question was originally granted to one Anna C. Erickson as lessee, and that it had been subsequently assigned, with the written consent of the lessor, to one Aaron Fried and others who afterward apparently became officers or stockholders in the appellant company. That assignment stipulated that no further assignment should be made without the written consent of the lessor. Subsequently the appellant corporation, when organized, appears to have continued the business and paid the rent to the lessor. There is, however, no evidence of any formal assignment of the lease to the appellant. It is urged that the lessor had permitted the appellant corporation to become his tenant to all intents and purposes as fully as if he had given a formal consent in writing to a written assignment of the lease to the corporation, that thus the provision that no further assignment should be made without the lessor's written consent was determined, and that an assignment by the appellant company to appellee would not be a breach of the provision against assignment without the lessor's consent or give to the lessor a right of re-entry. We do not concur in such contention. There having been, so far as appears, no formal assignment to the appellant corporation by Fried and the others to whom the original lease had been assigned with the lessor's consent, the lease appears to have been still held by Fried and his associates, some of whom at least appear to have been officers or stockholders in the appellant corporation, engaged in conducting the business in the corporate name. Substantially there was, so far as appears, no change in the lessees. There is no sufficient evidence tending to

support the contention that the lessor knew that appellant corporation as such to be in possession, or that it claimed to be in possession of the premises as lessee, or that any verbal or written assignment of the lease was ever made to it. We are not prepared to hold that under the evidence the lessor had waived his right to forfeit the lease in case of an assignment without his consent, merely because the rent was paid by or in the name of the appellant corporation in which the actual lessees appear to have been stockholders and officers. See Medinah Temple Co. v. Currey, 162 Ill. 441. In support of appellant's contention the case of Dumpor v. Symms, 4 Coke, 119 (Smith's L. C. 85-115), is cited. In that case "it was held that a condition not to alien without a license is determined by the first license granted." But, as in the case of Kew v. Trainor, 150 Ill. 150, the provision against assignment in Dumpor's case was entirely different from that of the lease in controversy. The case is not therefore in point, even if it ought otherwise to be followed in this state, in view of what is said in Kew v. Trainor, *supra.*

The judgment of the Superior Court will be affirmed.

*Affirmed.*