## ANTON GERAY v. MAHNOMEN LAND COMPANY.[1]

August 1, 1919.

No. 21,252.

**Vendor and purchaser — when title is marketable.**

1. A marketable title to land is one that is fair of record and free from reasonable doubt.

**Same — when title is not marketable.**

2. Where the title depends for its validity on matters of fact dehors the record, the determination whereof requires a judicial decree, it is not marketable, and the vendee in an executory contract of sale is not bound to accept it.

**Same — patents under Indian Allotment Act.**

3. The rule applies to trust patents issued by the Federal government to certain Indians of the White Earth Indian Reservation under the "General Indian Allotment Act" of February 8, 1887, and acts supplementary thereto, which on their face do not convey the fee title.

**Same — patent to mixed blood Indians.**

4. The fact that the Clapp Amendment to the acts referred to, approved June 21, 1906, declares that such patents shall operate as a transfer of the fee title as to mixed blood Indians, does not clear the title until the character of the particular Indian as a mixed blood is established as a matter of record.

**Same — unmarketable title.**

5. With that fact unsettled and undetermined a title derived through a trust patent so issued is not marketable within the rule stated.

Action in the district court for Mahnomen county to recover $2,000 paid on the purchase price of certain land to which defendant could not convey a marketable title. The case was tried before Grindeland, J., who when plaintiff rested denied defendant's motion to dismiss the action, made findings and ordered judgment in favor of plaintiff for the amount demanded. From an order denying its motion for a new trial, defendant appealed. Affirmed.

[1]Reported in 173 N. W. 871.

*Johnston & Carman,* for appellant.
*Clayton C. Cooper,* for respondent.

QUINN, J.

On June 23, 1916, the parties to the action entered into an executory contract for the sale and purchase of certain lands situated in Mahnomen county, whereby defendant sold and upon the payment of the purchase price agreed to convey the same to plaintiff by a "deed of general warranty," subject to a mortgage of $12,000. The contract was in the common form and contained the stipulations and agreements usually found in such instruments. The purchase price was fixed at the sum of $24,900, of which $2,000 was paid at the date of the transaction; the balance, less the mortgage debt, being payable on or before March 15, 1917. Plaintiff duly tendered the amount of the deferred payment and demanded a deed conveying to him the fee or marketable title to the lands. In this connection the complaint alleged that defendant "failed, neglected and was unable  *  *  *  to convey  *  *  *  a good and marketable title  *  *  *  as contemplated by said contract" of sale, and the court found the allegation true. Defendant, however, tendered to plaintiff a properly executed warranty deed in due form, which plaintiff rejected and refused to accept for the alleged reason that the title to the lands was defective and not marketable. And for the failure of defendant to convey a good title plaintiff gave notice of cancelation of the contract, and in June, 1917, brought this action to recover back the down payment of $2,000. He had judgment and defendant appealed from an order denying a new trial.

Under the terms of the contract obligating defendant to convey the lands by deed of "general warranty" plaintiff was entitled to a marketable or fee title. Murphin v. Scovell, 41 Minn. 262, 43 N. W. 1. This is not controverted by defendant, its contention being that the deed tendered plaintiff conveyed to him a perfect legal title, and constituted a full and complete performance of the contract on its part. The correctness of that contention presents the only question in the case.

The facts in reference to the title are not in dispute. The lands came from the Federal government to certain Indians of the White Earth Reservation and in the form of "trust patents," as authorized and provided for by the Act of Congress of February 8, 1887, known as the

General Indian Allotment Act, and the Supplemental Act of January 14, 1889, wherein provision was made for the allotment of and the transfer and conveyance of certain Indian lands to tribal members in severalty, but vesting in the allottees a conditional and restricted title only, the government retaining the fee for the benefit and protection of the Indians for a period of years. The acts of Congress and patents issued thereunder have been under consideration in other cases, to which reference is made for more definite and specific information. Dunnell, Minn. Dig. and 1916 Supp. § 4348; Vachon v. Nichols-Chisholm Lumber Co. 126 Minn. 303, 144 N. W. 223, 148 N. W. 288. The title of defendant is founded wholly upon deed from Indians to whom "trust patents" were issued by the Federal government, but which on their face did not vest in the Indians the fee title. But defendant contends that the Indians were all mixed bloods, and that the title held by them is valid and perfect by force of the provisions of the so-called Clapp Amendment to the acts of Congress referred to, approved June 21, 1906, wherein and whereby all restrictions upon the right of the patentees to sell or incumber the lands patented or allotted to them was as to mixed blood Indians wholly removed, and the title conveyed by patents theretofore or thereafter issued declared a fee simple.

In support of that contention defendant on the trial offered to show by competent evidence that the particular Indians were all mixed bloods, to whose patents the Clapp Amendment applied, and that by force of the amendment each was the fee owner of the land thus conveyed to him. The court excluded the evidence on the theory that on their face the patents conveyed a restricted and conditional title, and one that plaintiff was not bound to accept; nor to assume the burden of litigation necessary to establish the character of the Indians, thus to remove the defects in the title appearing upon the face of the record. Therefore that the title tendered by the defendant was not in compliance with the contract. The ruling is assigned as error.

Plaintiff was entitled to a marketable title, one that was fair of record and free from doubt. Howe v. Coates, 97 Minn. 385, 107 N. W. 397, 4 L.R.A.(N.S.) 1170, 114 Am. St. 723; Hubacheck v. Maxbass Security Bank, 117 Minn. 163, 134 N. W. 640, Ann. Cas. 1913D, 187. Defendant was bound to tender him such a title at the time appointed for the performance of the contract of sale, and if he failed to do so,

had no right thereafter to amend or perfect it without the acquiescence of plaintiff, particularly after plaintiff had elected to rescind the contract and sue for the down payment. And if the title on its face is defective, the trial court was clearly right in excluding the proffered evidence as to the character of the Indians.

Was the title defective? The question is answered in the affirmative. A title that is imperfect of record and can be completed only by judicial decree founded upon parol evidence of extrinsic facts which may or may not be disputed, is not a clear title, and a vendee who is entitled by his contract to a marketable record title is not bound to accept the same. Becker v. F. O. Erickson Co. 142 Ill. App. 133; Harrass v. Edwards, 94 Wis. 459, 69 N. W. 69; Fleming v. Burnham, 100 N. Y. 1, 2 N. E. 905; Justice v. Bulton, 89 Neb. 367, 131 N. W. 736, 38 L.R.A.(N.S.) 1, and note on page 14. Such was the title tendered to plaintiff.

If the Indians were in fact mixed bloods the title was complete and free from fault. U. S. v. Waller, 243 U. S. 452, 37 Sup. Ct. 430, 61 L. ed. 843. But that fact could be established only in an appropriate judicial proceeding and in harmony with the basis for the determination of the character of the Indians stated and applied in U. S. v. First National Bank, 234 U. S. 245, 34 Sup. Ct. 846, 58 L. ed. 1298. In that situation we have no difficulty in holding that defendant failed to tender a valid title to the land at the time appointed for the performance of the contract, and that plaintiff was absolved from further obligation thereunder. His right to recover back the down payment is therefore clear.

Order affirmed.