MARIE STACEY v. SUSAN E. TAYLOR AND ANOTHER.[1]

January 17, 1936.

No. 30,621.

[1]Reported in 264 N. W. 809.

*Bowen, Best, Flanagan & Rogers,* for appellants.

*N. D. Bessesen,* for respondent.

*Reuder, Carroll & Linstrom, Strong, Covell & Strong, Kingman, Cross, Morley & Cant, Brill & Maslon, Shearer, Byard & Trogner, Stinchfield, Mackall, Crounse, McNally & Moore,* and *Sumner B. Young, amici curiae,* filed a brief in support of the contention of respondent.

HILTON, JUSTICE.

Appeal from an order of the district court denying defendants' motion for a new trial in an action to recover upon a contract for the sale and conveyance to defendants of certain real estate located in the city of Minneapolis.

Russell L. Hawes, a resident of Worcester, Massachusetts, died in 1867, possessed, among other property, of a certain tract of real estate situate in what is now the city of Minneapolis. In ancillary proceedings his will was administered in probate court in Hennepin county. The decree of distribution decreed the property to "Stowe F. Hawes and Manson D. Hawes, executors of said last will and testament of the said Russell L. Hawes, deceased, in trust for the uses and purposes particularly set forth, mentioned and described in aforesaid last will and testament of the said Russell L. Hawes, deceased." Subsequently the trustees gave a deed to Elisha Morse, Jr. for an undivided one-half interest in the Minneapolis property. In 1873 the trustees gave another deed of the property to the same party. In 1887 a deed was given by one Mrs. S. F. Hawes, widow, John Wheelock Hawes, unmarried, and Fanny H. Kettell and Charles W. Kettell, her husband, to Elisha Morse, Jr. This deed contained the recital that the grantors were "the only legal heirs at law of the said Russell L. Hawes, deceased." Some time later the interest of Elisha Morse, Jr. was obtained by the Girard In-

vestment Company and became known as the Girard Investment Company's Ninth Addition to Minneapolis. On April 8, 1911, the Girard Investment Company delivered to plaintiff a warranty deed whereby plaintiff purportedly received title to lot twenty-seven (27), block two (2), Girard Investment Company's Ninth Addition to Minneapolis. This was part of the land to which Elisha Morse, Jr. had received deeds.

On October 8, 1923, the plaintiff and defendants entered into a contract whereby the plaintiff sold and agreed to convey to the defendants the above described lot "by Deed of Warranty upon the prompt and full performance of said parties of the second part [the defendants] of their part of this agreement." In consideration thereof the defendants agreed to pay the plaintiff a purchase price of $1,400 payable in monthly instalments. The defendants agreed to pay all the taxes and assessments upon the premises subsequent to the year 1922. In case of default in any particular by the defendants, the plaintiff was entitled to declare the contract canceled and terminated. The defendants paid $150 of the purchase price on the date of the contract. An additional $250 was paid on the principal during that year. Interest on the contract was paid until December, 1930, as were taxes for the years 1923 to 1931, inclusive. The total payments made by the defendants under the contract approximated $500. In March, 1934, plaintiff tendered to defendants a warranty deed to the property in question and demanded that defendants pay the balance due under the contract. This the defendants refused. On April 13, 1934, the defendants, by their attorney, tendered to plaintiff, in cash, the balance due under the contract and demanded a deed conveying a good, merchantable and marketable title. On the same day plaintiff, by her attorney, tendered to defendants' attorney a warranty deed to the property in question. The defendants' attorney refused it on the ground that the plaintiff did not have a good, merchantable, or marketable title. The next day the defendants gave the plaintiff written notice of their intention to disaffirm the contract and tendered to plaintiff possession of the property, at the same time demanding that plaintiff return to defendants all payments made by them under the contract.

Plaintiff brought this action on the contract for deed seeking to recover the alleged amount due. Defendants as a defense claimed that plaintiff's title was not good, merchantable, or marketable and counterclaimed for the payments made under the contract. The lower court found that the record title of plaintiff was good, merchantable, and marketable and made an order "that plaintiff have judgment against the defendants, and each of them, for the sum of one thousand dollars ($1,000) principal, with interest thereon at six (6) per cent per annum from December 1, 1930," and that said judgment be a specific lien against the property involved; that the same be sold at public auction to satisfy the judgment; and that a deficiency judgment issue for any amount not paid by such sale.

It is the claim of the defendants that the trustees under the Hawes will had no power to convey the interest in the property which they purported to convey to Elisha Morse, Jr., and for that reason the title of the plaintiff is defective.

A vendor, when he agrees to convey by a warranty deed, must furnish the vendee a marketable title at the time of performance. George v. Conhaim, 38 Minn. 338, 37 N. W. 791; Geray v. Mahnomen Land Co. 143 Minn. 383, 173 N. W. 871; Gregory v. Christian, 42 Minn. 304, 44 N. W. 202, 18 A. S. R. 507. Plaintiff was to deliver her "Deed of Warranty upon the prompt and full performance of said parties of the second part [the defendants] of their part of this agreement." The defendants made tender of the full purchase price on April 13, 1934, less than one month after plaintiff had tendered a warranty deed. At that time the plaintiff was required to have a good, merchantable, and marketable title. The only issue in this case is whether plaintiff had such a title.

The Hawes will, with which we are here concerned, contained the following provisions:

11. "All the rest and residue of my estate * * * I give, devise and bequeath to said Stowe F. Hawes and Manson D. Hawes, to be held by them in trust for the benefit of my wife and children, the income of one half of the same to be paid over to my said wife annually during her natural life, and the income of the other

half to be paid over to my children in equal proportions, in the same manner as the income of the bequests already made for the benefit of my said children, are to be paid over, and each share of the principal sum shall be disposed of and paid over at the decease of either my wife or any child in the same manner as the principal sum of the preceding legacies in trust are to be disposed of and paid over according to the terms of this instrument."

It was under this paragraph that the title to the tract of which the lot here in question was a part purported to pass by the deed from the executors to Elisha Morse, Jr. Further the will provided:

7. "At the decease of my said wife, said trustees shall dispose of the personal estate which shall be held for her benefit including one half of the proceeds of said Homestead estate if the same shall have been sold according to the provisions of her last will and testament. In case of the decease of my said wife without leaving a will, the estate so held in trust, including said Homestead estate, shall be held by my said trustees in trust for the benefit of my children in equal proportions in the same manner and upon the same terms as the aforesaid sum of Twenty five thousand dollars for each of my children is to be held, by the terms of this instrument, the share of each of my daughters to be held in trust during her natural life, and the share of each of my sons to be held in trust until he shall be or arrive at the age of twenty three years, the income to be appropriated for their benefit annually."

The questions raised here are: Was a valid trust created, and, if so, were the trustees given a power to sell and convey the land? Both of these questions must be answered in the affirmative.

In paragraph 11 the testator used the words "shall be disposed of and paid over." It seems clear that there is no way to pay over real estate in kind. Such words necessarily imply that the property first was to be sold and the proceeds paid over. That is the ordinary meaning attached to their use. Numerous cases hold that the words "pay over" imply a power of sale. See Clarke v. Clarke, 46 S. C. 230, 24 S. E. 202, 57 A. S. R. 675; Vrooman v. Virgil, 81 N. J. Eq. 301, 88 A. 372; Cherry v. Greene, 115 Ill. 591, 4 N. E. 257;

Webster v. Morris, 66 Wis. 366, 28 N. W. 353, 57 Am. R. 278. In Minnesota no particular form of words is necessary to create a testamentary power to sell and convey realty. 6 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 10298b, and cases there cited. A power of sale may be implied as well as expressed.

Defendants contend that the use of the words "disposed of" in combination with the words "paid over" changes the meaning of the latter words, or at least places a limit on the time when the executors could sell. However, in order to pay over, it first was necessary to dispose of the property. Defendants suggest that even if there was an implied power of sale it was not to arise until the death of the wife or one of the children and, there being no showing that either the wife or any of the children ever died, the trustees had no power to sell. This theory is predicated on the fact that in paragraph 11 the testator used the words, "each share of the principal sum shall be disposed of and paid over at the decease of either my wife or any child." We do not draw the same conclusion from those words as do defendants. In paragraph 7 we find the words "at the decease of my said wife, said trustees shall dispose of the personal estate which shall be held for her benefit including one half of the proceeds of said Homestead estate if the same shall have been sold according to the provisions of her last will and testament." There the testator speaks of his wife's entire estate, with the possible exception of the homestead as being a "personal estate." Real estate certainly is not personal property even if one holds only a life interest. It would have been necessary for the trustees to have sold the real estate prior to the time of the wife's death in order to create a "personal estate." To do so a power would have had to be found in the testator's will. That one must have been intended necessarily follows.

In paragraph 11 the words are that "each share of the principal sum" is to be disposed of and paid over when either the wife or any of the children die. It is unusual for an entire family to die simultaneously. If the contention of the defendants is to prevail that would have been the expected result here. However, we adopt a contrary view. By the terms of the instrument the separate shares

of the principal sum were to be disposed of at different times. Suppose one of the children died first. His share would then have been disposed of and paid over. If there was no power to sell the residuary estate then there would have been no method by which the trustees could have determined the share which belonged to the child that had died. There is no power of partition in the will. A fair interpretation would seem to require that there was a power of sale to be exercised whenever the trustees wished and the shares of the principal sum apportioned. The shares would then be disposed of and paid over as the occasion arose.

The defendants contend that the trust is invalid for the reason that the trustees had no active duties to perform. Under our statutes, the pertinent sections of which were in force at the time this will was administered, 2 Mason Minn. St. 1927, § 8090 (Minn. Rev. St. 1851, c. 44), trusts of land may be created:

"2. To sell, mortgage, or lease lands for the benefit of legatees, or for the purpose of satisfying any charge thereon."

We have already shown that the trustees had a power of sale.

Defendants claim that the words of the will preclude any such construction as there was no power to invest any money so received and thus there would be no income to pay over annually to the beneficiaries as specified by the terms of the instrument, whereas if the land were not sold it would produce an income for this purpose. Paragraph 6 of the will provides:

"Said trustees shall also hold the sum of forty thousand dollars in trust, the income of the same to be paid over to my said wife annually during her natural life. Said trustees shall also hold in trust the sum of twenty five thousand dollars for the benefit of each of my children who shall survive me whether living now or born hereafter, the share of each of my daughters to be held by said trustees during the natural life of said daughter, and the share of each of my said sons to be held by said trustees until said son shall arrive at the age of twenty three years, the income of each share to be paid over annually."

Under that paragraph the testator evidently left cash and expressly provided that *the income shall be paid over annually.* No express provision was made for investment, but surely no one would deny that the trustees had the power to invest the money in order to insure the beneficiaries of the income which the testator desired that they have. The only possible manner by which such an income could arise would be by investing those sums, and the same would be true of any proceeds derived from the sale of the land.

In paragraph 5 we find:

"To allow to my said wife Susie F. Hawes the use and occupation of said Homestead estate free of rent during her natural life, or until she shall elect in writing to have said real estate sold and conveyed. If said Susie F. Hawes shall in writing elect to have said real estate sold, said trustees shall sell and convey the same, the proceeds of the same to be invested by them in good securities (more attention being paid to the safety of the investment of the trust property herein disposed of than to the largeness of the income) * * *."

Defendants' position is that under the maxim *expressio unius est exclusio alterius* any power of sale as to the other real estate is excluded. To us the words used convey a contrary meaning in this instance. Apparently it was the intention of the testator to prevent the trustees from selling the homestead without the written consent of the wife. The provision here appears to be a restriction on the trustees as to that particular part of the estate. Had not that been the purpose and the other contentions of the defendants were sound, then there would have been no need of this express restriction in the will. That the testator intended a power of sale on the part of the trustees as to the residuary estate is shown by the fact that no such restriction was made as to it.

Whenever possible a trust should be sustained when it can be done by any fair and reasonable construction of the instrument creating it. Atwater v. Russell, 49 Minn. 57, 79, 51 N. W. 629, 52 N. W. 26; Congdon v. Congdon, 160 Minn. 343, 200 N. W. 76; Matt-

son v. United States E. H. Co. 171 Minn. 237, 213 N. W. 893. In this case the intention to create a trust is obvious. The use of the words "to be held by them in trust," "said trustees," "to be held by said trustees," "in trust," throughout the entire instrument is ample evidence thereof, and the uses and purposes for which the trust was created are valid under our statute.

Defendants assert that even if all this be true still there is a reasonable doubt as to whether the title of plaintiff was good, and because of such doubt the defendants are entitled to rescind. In support they cited Townshend v. Goodfellow, 40 Minn. 312, 41 N. W. 1056, 3 L. R. A. 739, 12 A. S. R. 736; Hedderly v. Johnson, 42 Minn. 443, 44 N. W. 527, 18 A. S. R. 521; Austin v. Barnum, 52 Minn. 136, 53 N. W. 1132. However, a different construction of the will than here made does not seem reasonable. Further, such a long time has elapsed since Elisha Morse, Jr. received the deed to the land that it would seem unreasonable even to suppose that the heirs of Russell L. Hawes, if any there be, could successfully claim the property in question.

Affirmed.

